HOUSE, RESPONDENT, *v.* ANACONDA COPPER MINING CO., APPELLANT.

(No. 8,242.)

(Submitted March 16, 1942. Decided June 18, 1942.)

[126 Pac. (2d) 814.]

*Messrs. W. H. Hoover, John V. Dwyer, J. T. Finlen, Jr.,* and *Frank F. Jestrab,* for Appellant, submitted an original and a reply brief. *Mr. Finlen* and *Mr. Wm. G. Baucus,* of Counsel, argued the cause orally.

*Mr. Wellington D. Rankin, Mr. Arthur P. Acher* and *Mr. Charles L. Zimmerman,* for Respondent, submitted a brief; *Mr. Rankin* argued the cause orally.

*Messrs. Erickson & Goza, amici curiae,* submitted a brief; *Mr. Sam D. Goza, Jr.,* argued the cause orally.

*Mr. J. Burke Clements,* Chairman of the Industrial Accident Board, appearing as *amicus curiae,* submitted a brief and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

Claimant received an industrial injury while in appellant's employ. He filed his claim with the Industrial Accident Board. After a hearing the claim was allowed and compensation of $21 a week was awarded which was determined by multiplying the daily wage by six, but reciting that claimant was only employed five days per week. Petition for rehearing was denied and appeal taken to the district court of Silver Bow county. The court sustained the action of the board. From that judgment this appeal was taken.

The specifications of error raise, first, the question whether ██ ██ or not the record sustains a finding that claimant suffered an industrial accident and that disability existed by reason of it. The record supports the finding that the claimant suffered the disability claimed and that it continued for the twenty-six weeks for which the award was made. Claimant's

testimony as to the happening of the accident from which the injury resulted was supported by that of a fellow employee who was present at the time it occurred. Dr. Colman, who treated the claimant, testifying on behalf of appellant, stated that claimant was suffering from a back injury which disabled him from the day of the injury, August 10th, to September 5th. He stated that on that date the back condition had cleared up. Claimant testified that the back injury continued, and on this point the board and the district court determined the issue against appellant. The testimony as to the continuance of the disability is supported by that of Dr. Shanley, who, while he could not say when the injury took place, did say that there had been an injury such as described by claimant and Dr. Colman, and that "his sacro back * * * is still definitely out." There is, then, substantial evidence to prove the fact of the injury and the continuance of the disability upon which the award is based, and we may not set it aside on this point. (*Kelly* v. *West Coast Construction Co.*, 106 Mont. 463, 78 Pac. (2d) 1078; *Morgan* v. *Butte Central Min. Co.*, 58 Mont. 633, 194 Pac. 496.)

The testimony shows that claimant was suffering from Buerger's disease, which affected one of his legs. The record is not clear as to how much of his disability may be due to this condition, but there is substantial evidence that it originated with the back injury and not with the inception of the Buerger's disease, and its continuance was due primarily to the back injury and not to the disease.

Claimant was employed regularly on a five-day week. It is agreed that at the time of the injury that was the usual work week in the mining industry. The compensation awarded claimant was on the basis of a six-day week, and this is assigned as error. In passing upon this question we must examine sections 2874, 2875 and 2912, Revised Codes. These sections are all a part of the Workmen's Compensation Act. Section 2874 provides that " 'week' means six working days, but includes Sundays." Section 2875 defines "wages" as "the aver-

age daily wages received by the employee at the time of the injury for the usual hours of employment in a day, and over-time is not to be considered."

In its original form section 2912 appeared as a part of Chapter 96, Laws of 1915, and provided in subsection 16 (a) "for an injury producing temporary total disability, fifty percentum of the wages received at the time of the injury," subject to certain provisions for a maximum and a minimum weekly payment. This section was amended several times so as to increase the compensation by raising the percentages, but as to the language here in dispute, there has been no change and it now appears as part of section 2912, supra. Sections 2874 and 2875 were enacted originally at the same time as section 16 (a) of Chapter 96, Laws of 1915, and appear as part of that chapter.

The gist of the contention here on the part of the appellant is that section 2912 is controlling, and that in computing compensation the actual wage received per week should be used as the base to which the percentages provided in the Act should be applied. Claimant, on the other hand, urges that sections 2874 and 2875 may not be disregarded and when all these are taken together, that the board's method of computing compensation is the correct one.

In the first place, it may be noted that the board has always based awards on the basis of a six-day week. If appellant's contention is correct, then if an employee were injured on his first day on the job his compensation would be the minimum, as his wage received would be one day's wage. The chairman of the Industrial Accident Board, appearing by brief and in person as *amicus curiae*, points out one other possible result of a holding as the appellant desires. Suppose A and B were engaged in the same industry. A employs 100 men six days a week, and B employs 200 men three days a week. Since the man-hours worked are the same, the industrial risks are the same and each will have the same number of accidents. If B were allowed to discharge his obligation by paying his men on the basis of a three-day week, he would pay out only half

as much as A on the basis of the same number of man-hours at work. If B pays on the basis of a six-day week, the cost of compensation to him will be the same as to A, but no more.

The legislature had but one purpose in discussing "week," "wages," and "weekly wages received," and that was to fix a base from which compensation was to be determined by application of certain percentages. Appellant, in urging that sections 2874 and 2875 do not apply, relies on the language of section 2853: "Unless the context otherwise requires, words and phrases employed in this Act shall have the meanings hereinafter defined." It argues that when in section 2912 it is provided that the compensation shall be based on the weekly wage received, the context of that section requires that sections 2874 and 2875 have no effect. If that were true, then in computing compensation the last line of section 2875, to the effect that overtime shall not be considered in determining wages, would not apply, and if a man were injured in the week in which he put in overtime, his compensation should be based on the wages actually received, including the overtime. Obviously the legislature in making this provision intended it to have effect. Under appellant's position, if a man were injured in a week when he worked but one day when he usually worked six days, his compensation would be based on the actual wage received for that week, or one day's wage. It is suggested that since five days make up the usual work week, compensation should be based on five times the daily wage, even though the injured workman worked more or less than five days and received pay accordingly. There is no warrant in the Compensation Act for that view. Either sections 2874 and 2875 have effect so that compensation must be based on six times the daily wage, or else section 2912 has the effect of making them imperative, and compensation must be based solely on the actual wage received at the time of the injury. If the latter view is correct, the compensation must be determined by the actual wage received, be the wage small because the injured workman did not work full time, or be the wage

swollen by overtime. The result of such a view would be that instead of an Act which would be relatively certain and uniform in its operation and one which would adequately fulfill its purpose, which is to provide for compensation in the nature of insurance, rather than in the nature of damages, our Act would operate largely by the laws of chance and would result in great inequality in the rate of compensation paid to injured workmen receiving the same daily wage and engaged in the same industry. In order to prevent just such a situation, section 2874 defining the week, and section 2875 defining wages and eliminating overtime as a factor in computing compensation were enacted. It wanted to make the base definite, and further it determined that within certain limits a workman receiving higher pay should draw more compensation than one drawing a lesser wage. The context of section 2912 does not require a holding that sections 2874 and 2875 be given no effect. At the time Chapter 96, Laws of 1915, was passed, there was no conflict between "weekly wages received" and " 'week' means six working days," as the weekly wages would be six times the daily wage. An examination of Chapter 96, now appearing, with amendments, as Chapter 256, Political Code, reveals that the only possible application of the definitions found in sections 2874 and 2875 is in the determination of compensation to be paid, and no other application of these definitions is suggested by counsel.

There can be no doubt that the legislature in passing Chapter 96 in 1915, and in subsequently re-enacting it with some amendments, intended that sections 2874, 2875 and 2912, should all be given effect, and the intention of the legislature to be gathered from these three sections is clear that compensation should be based on a week of six days. It is significant that section 2912, as it originally appeared, has been amended so as to increase the compensation to be paid by increasing the percentage of the wage to be paid. Those increases would be made ineffective if the base from which they are computed could be changed as here sought.

The advent of changed conditions in light of the original enactment and its purpose cannot operate to amend the Act. Workmen's compensation was provided—not to pay damages to the injured employee, in which case the actual wage received would, of course, be the conclusive measure of the compensation to be paid, as that would be the loss, plus pain and suffering—but rather the purpose of the Act was to provide a form of insurance, place the loss on the industry and to insure that the injured workmen would not be charges on the public. (*Betor* v. *National Biscuit Co.*, 85 Mont. 481, 280 Pac. 641; *Kerns* v. *Anaconda Copper Min. Co.*, 87 Mont. 546, 289 Pac. 563.) The amount of compensation required to satisfy this purpose necessarily had to be more or less arbitrarily arrived at by the legislature. This it did by the enactments of sections 2912, 2874 and 2875, and other sections of the Act, and we may not disregard them.

With the advent of the five-day week, three attempts, one in the 1933 session, one in the 1939 session, and one in the 1941 session, have been made to amend the Act to reach the result here contended for by appellant, but all were defeated. We may take note of this situation as we may of the executive interpretation of the Act by the board charged with its administration. (*See State ex rel. Public Service Commission* v. *Brannon*, 86 Mont. 200, 283 Pac. 202, 67 A. L. R. 1020; *State ex rel. Morgan* v. *Knight*, 76 Mont. 71, 245 Pac. 267; *Miller Insurance Agency* v. *Porter*, 93 Mont. 567, 20 Pac. (2d) 643; *State Board of Land Commissioners* v. *Ririe*, 56 Utah 213, 190 Pac. 59.)

When the purpose of the Workmen's Compensation Act, its history, the conditions at the time it was passed, the executive interpretation of it, and the subsequent unsuccessful attempts to amend it are considered, it is clear that sections 2874 and 2875 have a purpose, that they were not in conflict with section 2912 at the time they were passed, and that the legislature intended that they be given effect with section 2912, and when

414

considered with that section they support the action of the board and the judgment of the trial court. Affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICE ANGST-MAN concur.

MR. JUSTICE ANDERSON:

I am unable to agree with that part of the majority opinion relating to the amount of compensation allowed. The law says that the claimant shall be paid on the basis of "sixty-six and two-thirds per centum of the weekly wages received at the time of the injury" but limited to the maximum and minimum allowances of $21 and $8 per week. This can mean only one thing, and that is that the wages received each week working full time shall be the basis of computation. What shall constitute full time employment is a matter of contract between the employer and the employe. When they agree upon the number of work days in the week, each is bound thereby. Neither the employer nor the employe can demand more days. And the total wages received in a week when working full time in such employment is the weekly wage.

The employe in this case was working five days a week and paid at the rate of $5.25 per day. For full time employment he received $26.25 each week. That was his weekly earnings, his weekly wages. That is the fact. Sixty-six and two-thirds per cent. of this weekly wage is $17.50, and that is the amount which should be allowed as the weekly compensation. For twenty-six weeks the total amount is $455, instead of $546 allowed by the board.

The board, in its findings, says that "the Compensation Law requires the Board, in figuring compensation to multiply the daily wage by six to arrive at a weekly wage basis upon which to base the rate of compensation." That was done, and the District Court sustained the board.

The Compensation Law does not expressly require the board

to compute compensation on the basis of a six work day week. That is the board's interpretation of the law. As the basis of such interpretation they take the definition of the word "week" as stated in the law as controlling. The Compensation Law, in a list of word and phrase definitions, says that 'Week' means six working days, but includes Sundays." This definition, they say, must be taken into account whenever the week is a matter of consideration, and so when "weekly wages" is spoken of in the law it means the earnings of a six working day week, and nothing else.

The definitions given in the law are not made absolute, the general provision as to the effect to be given being that "Unless the context otherwise requires, words and phrases employed in this Act shall have the meanings hereinafter defined.''

The subject that is referred to in the language that is to be construed is a matter of fact, an actuality, something that has already transpired, the weekly wage which the claimant received at the time he suffered the injury. Upon inquiry we find that it was $26.25. That was what he received each week for a full week's work. It was his weekly wage. The time he put in each week was five eight hour days. That was his regular full time employment. As stated in the majority opinion, it was agreed that at the time of the injury, that was the usual work week in the mining industry.

To place the construction contended for upon the language employed gets away from the facts, and finds something to be a fact which is not true. Multiplying his daily wage by six gives him credit for one day that he did not work. It throws into his labor total one day's labor that someone else performed in the industry in which he was employed, and a day's earnings that was received by someone else. The legislature could not have intended any such result and we should not find it to be so unless such intention was clearly expressed.

The cases cited by respondent in support of the contention for the six day week deal with part-time employment and intermittent employment and some of them under statutes spec-

416

ifying exactly how the computation shall be made in such circumstances. Here we have no such problem nor have we any express legislative direction as to how it should be dealt with if that were the problem. In the instant case, claimant was working in full time employment. Five days per week was the regular work week in the industry in which he was employed and in the particular employment in which he was engaged. There is no question of loss of time in the employment. He was working full time. The problem is simple and it is only under the strained and unwarranted interpretation of the law that the difficulty arises and the unreasonable and unfair result is obtained.

MR. JUSTICE MORRIS:

I concur in the above dissenting opinion of MR. JUSTICE ANDERSON.