EDWIN P. MAHLUM, Claimant and Appellant, v. FRED
BROEDER, JR., Defendant and Respondent.

No. 10904.

Submitted February 8, 1966. Decided April 1, 1966.

412 P.2d 572.

Lee A. Jordan, Missoula (argued), for appellant.

S. Y. Larrick, Kalispell (argued), L. V. Harris, Helena (argued), Robert Swanberg, Helena (argued), for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Edwin P. Mahlum, an injured workman, is receiving compensation under section 92-703, R.C.M.1947. He brings this appeal alleging error by the district court of the eleventh judicial district, the Honorable E. B. Foot, presiding judge, when it found, concluded, and ordered that his "wages received at the time of the injury," within the meaning of section 92-703, were to be based on the usual and normal five-day week he worked, and not on the statutory six-day week provided for in section 92-422.

Mr. Mahlum, a woodsman working as a tong slinger, was severely injured when struck by a log on November 15, 1960. No question has been raised concerning his permanent partial disability. At the time of the injury he was 40 years old, married, and the father of three minor children. Fred Broeder, Jr., the employer at the time of the accident was enrolled under

Plan 1 of the Industrial Accident Board, a self-insurer.

A hearing before the Industrial Accident Board was held in Kalispell on June 6, 1962; by the Board's order he was awarded 65 percent of his wage loss subject to the statutory maximum compensation of $40 per week not to exceed 500 weeks. In his original claim for benefits, he submitted that he was employed at an hourly rate of $2.05 for an eight-hour day and a five-day week, and on a piece work basis paying 80¢ per thousand feet of timber handled. On this evidence the Board determined his "wages received at the time of the injury" to be $82 per week, undoubtedly computed by multiplying $2.05 per hour by eight to find the daily wage, then by five to find the weekly wage. Mr. Mahlum was not satisfied with this figure and appealed to the district court.

At the hearing before the district court on August 17, 1964, *it was stipulated* that Mr. Mahlum had been employed for approximately two years prior to the accident and that normally and usually he worked a five-day week. On the basis of his total earnings during this period of employment, his average daily wages were determined to be $21.40, or $107 for a five-day week. It is not disputed that Mr. Mahlum had been paid on a piece work basis of 80¢ per thousand feet of timber handled. The district court modified the Board's order by changing the 65 percent of wage loss to 62½ percent, in keeping no doubt with the statutory maximum of $40 per week which Mr. Mahlum has not questioned. The $40 per week amount has been raised to $46 by the 1965 amendment, and by raising the figure of his "wages received at the time of the injury" to $107 per week, computed by multiplying the average daily wage of $21.40 by the five-day week he usually and normally worked. It is Mr. Mahlum's contention that this wage figure within the meaning of the statute should be $128.40, computed by multiplying his average daily wage of $21.40 by the statutory six-day work week of section 92-422. The applicable portion of section 92-703 provides: "where the injured employee has a wife and two (2) children, or three (3)

children residing within the United States who would be entitled to compensation in case of his death, sixty-two and one-half percentum (62½%) of *the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter,* subject to a maximum compensation of forty dollars ($40.00) per week." (Emphasis added.)

Special attention should be given to the fact that the language of sections 92-701 and 92-702, providing for temporary and permanent total disability, are identical: "where the injured employee has a wife and two (2) children, or three (3) children residing within the United States who would be entitled to compensation in case of his death, sixty-two and one-half per centum (62½%) of the *weekly wages received at the time of the injury."* (Emphasis added.)

Section 92-422 provides: " 'Week' means six working days, but includes Sundays." It is Mr. Mahlum's position that the six-day week which is used in computing the "weekly wages" that an injured workman "received at the time of the injury" under sections 92-701 and 92-702 must also be applied in computing the "wages" that an injured workman "received at the time of the injury" under section 92-703. He specifies as error: "The district court erred in establishing claimant's pay rate at the time of injury at $107 per week, as the district court should have multiplied the claimant's usual daily wage of $21.40 by six, and thereby established claimant's pay rate for compensation purposes as $128.40 per week."

As long as Mr. Mahlum is unable to return to remunerative employment the determination of this question will have no practical application. Under section 92-703 the pre-injury wages become important only when the injured workman's post-injury wages are shown to be of the sufficient difference to make the statutory percentages applicable. But because he "will never be able to return to work in the woods, and may well spend much of the rest of his life at odd jobs or light

work, with a resulting wage loss," Mr. Mahlum feels it important to him that his "pay rate at the time of injury be accurately and properly established so that his future wage loss can be accurately determined."

Giving special attention and study to the language of the three sections in question, Judge Foot in a scholarly memorandum to his decision explains his holding as it concerns injuries covered by section 92-703, supra. It is as follows:

"* * * Section 92-701 and 92-702 each contain the language 'of the *weekly wages* received at the time of injury,' whereas 92-703 says merely 'of the difference between the *wages received* at the time of injury, etc.' In other words, both the sections relating to total disability refer to weekly wages but that relating to partial disability merely says wages received.

"This raises the question, what is the purpose of using the word weekly in the first two and not in the last? The first two simply allow on a graduated scale, depending on status as to dependents, a percentage of weekly wages earned, whereas the last, 92-703, allows a percentage of difference between wages received and those the workman might earn.

"The history of the workmen's Compensation Act discloses that, as enacted in 1915 and carried through until 1925, all three provisions refer only to wages (not weekly wages) received. Thus 92-701 (then section 2912) for temporary total disability was 50 per cent of wages received at injury subject to maximums and minimums, and 92-702 (2913) for permanent total disability also provided for 50 percent of wages received subject to maximums and minimums. Section 92-703 (2914) for partial disability provides for one-half the difference between wages received at injury and those the man might be able to earn.

"But the 1925 Amendment, Chapter 121, Laws of 1925, amended as follows:

"Section 10, Chapter 121 amended was amended to increase maximum and minimum amounts allowable and inserted

'weekly' before 'wages' in the text, so it would read 'weekly wages.' Section 11 of Chapter 121 was also amended to increase maximums and minimums and inserted the word 'weekly' before the word 'wages' to the same effect. Section 92-703 (2914) was not amended in 1925.

"In 1929 by Chapter 177 of the Laws of 1929, our Section 92-701 was amended, as to temporary total disability, to provide for an elaborate graduated scale of percentages and amounts relating to dependency status but kept the words 'weekly wages,' so also our section 92-702 was amended by Section 13, Chapter 177, Laws of 1929 relating to permanent total disability to provide the same elaborate graduated scale and percentages but retaining the words 'weekly wages.'

"The same legislative session, Section 2, Chapter 177, Laws of 1929, also amended our Section 92-703 to provide for the same graduated scale as in 92-701 and 92-702 and kept the same reference to 'wages received' not 'weekly wages.'

"The distinct qualifying adjective 'weekly' was inserted in both acts relative to total disability in 1925. Such adjective qualifying the word 'wages' was not inserted in the act relating to partial disability. The essential difference between the acts concerning total and that relating to partial disability is that those concerning total disability simply allow a percentage of such weekly wages, whereas the act relating to partial disability allows a party the difference between wages received and those that could be earned.

"Ever since 1925 through numerous amendments relating to amounts allowable as maximums and the like, no change has been made by the legislature as to wages. We will have weekly wages received concerning total disability either temporary or permanent and still have simply wages received as to partial disability."

While, as will be mentioned later in this opinion, this is strict construction of the statute, in view of the period it has been on the statute books and the number of legislatures that have

considered it, as well as opinions of this court, it is our holding that Judge Foot was right in his interpretation and if any statutory change is to be made it should be done legislatively and not judicially.

In this appeal, the Industrial Accident Board has appeared as Amicus Curiae, both filing a brief and arguing orally before this court. It is the Board's request that "if * * * this Court is to make a decision on an issue which may never be more than academic, insofar as the instant case is concerned, the Court should go all the way and lay down a rule for the computation of post-injury earnings as well as the rule for computation of pre-injury earnings." It is the Board's feeling that "a definite and precise method for arriving at the post-injury earnings is every bit as important to determining the amount of compensation to which an injured workman is entitled as the method for arriving at the pre-injury earnings." However, the Board has cautioned us that it does not disagree with the result reached by the district court nor with the position taken by the respondent. The basic premise underlying Judge Foot's conclusion is the strict statutory language. The argument is constructed thus: since the legislature amended the term "weekly" in sections 92-701 and 92-702 before the term "wages," but left the term "wages" unmodified in section 92-703, the six-day week component of the formula in determining pre-injury earnings for total disability cases is limited to those cases and should not be extended to the computation of pre-injury earnings in partial disability cases.

This court will not read into section 92-703 the word "weekly" which the legislature "rather pointedly omitted." Within the framework of whether the injuries are totally disabling or only partially, there are different considerations in determining compensation. If the disabled workman's capacity to earn is totally destroyed, then the only issue is the simple determination of the amount of weekly benefit to which he is entitled. Since the emphasis is on compensation, arbitrary and

fictitious earning figures may be justified. If, however, the disabled workman still has some capacity to earn, though reduced, the emphasis shifts to the *extent* of his impairment, This can most accurately be measured by comparing his actual wages before his injuries and his actual wages after his injuries. Therefore, the single qualification must be that both earnings at the time of injury as well as those thereafter be reasonably and fairly established, and this qualification can most effectively be met by presentation and admission of evidence of actual earnings with the formula prescribed by 99 C.J.S. Workmen's Compensation § 293, p. 991, which states: "Where there is no applicable provision prescribing a formula or method for determining an employee's average weekly earnings under particular circumstances, the determination must be based on the employee's actual earnings during a preceding period sufficiently long to include the usual seasonal fluctuations in hours of employment, wage rates, etc., to establish reasonably and fairly his true earning capacity."

We recognize the effect that previous decisions of this court have had on this quandary. We do not feel that any useful purpose, however, can be obtained by an analysis of those opinions in light of the question with which we are faced here. What we recognize from the pattern of previous arguments before the court in those cases is an absence of consistent position on part of both the particular claimant's counsel before us at the time and of counsel for the Board in attempting to ascertain the proper method under the statute for determining the figures on which the compensation award is based, whether for "wages received at the time of the injury" or "wages that such injured employee is able to earn thereafter." It is our purpose in this opinion, therefore, to determine if under section 92-703, the statute for partial disability, the six-day work week of section 92-422 is a component in the formula for determining both pre-injury wages and post-injury wages.

The objective of workman's compensation legisla-

tion is to compensate injured workmen for disabilities caused from industrial accidents. It was not enacted to provide for payment of damages in tort-connected liability cases. The principle on which it is based is social insurance—to insure the injured workman against disability from a work-connected injury, and to place the costs of that injury on the industry employing him. See generally Larson, Workmen's Compensation Law; Williams v. Industrial Accident Board, 109 Mont. 235, 97 P.2d 1115; State ex rel. Morgan v. Industrial Accident Board, 130 Mont. 272, 300 P.2d 954; House v. Anaconda Copper Mining Co., 113 Mont. 406, 126 P.2d 814. Consequently, "[t]he amount of compensation required to satisfy this purpose necessarily had to be more or less arbitrarily arrived at by the legislature." House v. Anaconda Copper Mining Co., supra, at 413, 126 P.2d at 817. It is not the actual amount of earnings in dollars and cents that is of primary importance in finding the basis on which to award compensation; "the proper test is a loss of earning capacity." Lind v. Lind, 142 Mont. 211, 216, 383 P.2d 808, 810; Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 P.2d 340; Greenfield v. Industrial Accident Board, 133 Mont. 136, 320 P.2d 1000. It is recognized, however, that a workman's earnings and wages are perhaps the most reliable indication of his earning capacity. Consequently, the legislature has used "wages" as the basic element in the formula for computing compensation reflecting the loss of capacity. By section 92-423, " '[w]ages' mean the *average daily wages* received by the employee at the time of the injury for the usual hours of employment in a day, and overtime is not to be considered." (Emphasis added.) Thus, we see that the first step in the formula for compensation is to determine the average daily wage. This is a simple arithmetical computation of dividing a man's earnings over a reasonable period of time by the total number of days he worked, excluding all overtime. What *is* a reasonable period of time, of course, depends on the circumstances of each case. The period must be sufficiently long to take into account seasonal fluctuations for hours, wage

rates, vacations, and any other factors which may materially affect the average daily wage. Cf. 99 C.J.S. Workmen's Compensation § 293, p. 991. The average daily wage is then converted into the economic unit on which compensation is based —the work week. We note that the maximum compensation allowable under both total and partial disability statutes is on a "per week" basis. The use of the percentage of the difference between the pre-injury wages and the post-injury wages which is to be compared to the "per week" maximum must also be on a "per week" basis, otherwise a comparison of different economic units would result. Though section 92-422 requires that the "per week" definition is an arbitrary work week of six days, as we have pointed out in our concurrence with Judge Foot in his memorandum, and in view of what the legislative history of section 92-703 shows, the formula for computing average weekly wage will be to multiply the average daily wages by actual days worked.

Both the respondent and the Industrial Accident Board in argument and brief has asked or suggested for uniformity sake that we override the fictitious situation of a six-day week which was first recognized for computation of wages in our opinion in House v. Anaconda Copper Min. Co., 113 Mont. 406, 126 P.2d 814. Aware, as we are, that this opinion recognizes a different formula than that used to compute under sections 92-701 and 92-702, and acknowledging the desirability for uniformity, we nonetheless leave to the Legislature the job of writing the law. We call to their attention this change and leave to their wisdom what should be done about it. Our holding here conforms to the Board's customary and long-standing interpretation.

We uphold the decision below.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES concur.