No. 13456

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

RON WALTER,

      Claimant and Respondent,

vs.

PUBLIC AUCTION YARDS,  Employer,
     and
NATIONAL AUTOMOBILE & CASUALTY INSURANCE CO.,

      Defendant and Appellant.

---

Appeal from:  Workers' Compensation Court
           Honorable William Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

    Andrew J. Utick, Helena, Montana

    For Respondent:

    Moulton, Bellingham, Longo & Mather, Billings, Montana

---

Submitted on briefs:  August 10, 1978

Decided:

Filed:  MAR 21 1979

MAR 21 1979

Thomas J. Kearney
          Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Through hearings before the Workers' Compensation Court in Helena, Montana, on October 24, 1975, and in Billings, Montana, on February 4, 1976, claimant sought workers' compensation benefits for an injury to his right knee which occurred on February 16, 1973. On April 5, 1976, the Workers' Compensation Court entered findings of fact and conclusions of law ordering the insurer to pay permanent partial disability benefits to the claimant based upon a weekly wage of $87.50 from the date of the claimant's last payment, such payments to be made indefinitely, until changed by order of the court.

On April 26, 1976, the insurer filed a petition for rehearing and an alternative motion to amend and supplement the findings of fact and conclusions of law. The insurer objected to the computation of claimant's compensation benefits based upon a weekly wage of $87.50 rather than upon a weekly wage of $18.36; it objected to payment of benefits for an indefinite period of time rather than limiting such benefits to the statutory maximum set forth in section 92-709, R.C.M. 1947, now section 39-71-705 MCA; and it submitted findings and conclusions designed to retain jurisdiction of the matter in the Workers' Compensation Court until all medical testimony was completed and the full extent of claimant's permanent partial disability could be determined. By order dated June 30, 1976, the Workers' Compensation Court denied the insurer's petition and motion and summarily returned the file to the administrator of the Workers' Compensation Division. The insurer appeals.

There is no dispute that claimant Ron Walter suffered a compensable industrial accident. On February 16, 1973, while in the employ of Western Livestock Reporter, d/b/a Public Auction Yards, claimant sustained an accidental injury to his right knee when he was kicked by a cow. He was first treated by Dr. L.C. Allard who diagnosed a rupture of the tibial collateral ligament of the right knee. Dr. Allard referred claimant to Dr. Peter V. Teal for possible surgery. That same day, February 16, 1973, claimant was seen by Dr. Teal. Dr. Teal felt that claimant had suffered a partial tear of the medial collateral ligament of the right knee. He placed claimant's right leg in a cylinder cast.

On March 6, 1973, claimant filed a timely claim for compensation benefits for injury to his right leg.

Subsequent to his treatment by Dr. Teal, claimant returned to his primary occupation of operating his farm where he continued to experience difficulty with his right knee. In January 1974, claimant, after consulting with Dr. Ronald Losee, decided to undergo surgery. On January 15, Dr. Losee performed a lateral meniscectomy on claimant's right knee. At that time Dr. Losee estimated claimant would be off work for six weeks and felt there would be no permanent impairment other than a little joint looseness.

After surgery, claimant continued to see Dr. Losee. However, upon the latter's refusal to submit an impairment evaluation claimant was sent by the insurer to Dr. Frank Humberger of Bozeman for evaluation. Dr. Humberger felt that because claimant continued to complain of problems with his right knee, another arthrogram (the first one having been done at Dr. Teal's direction) should be done. After consulting with Dr. Losee, claimant refused to undergo this procedure. Dr. Losee advised that healing

was completed; that he would not recommend a repeat arthrogram; that compensation benefits should be discontinued; and that the claimant would be reexamined in the spring.

The next medical report from Dr. Losee is a handwritten report, dated March 10, 1975, which states:

"Diagnosis on Ron Walter:

"Medial Capsular Insufficiency and Arthrosis Rt Knee.

"Accounts for his pain and instability.

"R. E. Losee"

There is no further medical information contained in the file.

At the hearings before the Workers' Compensation Court, it was brought out that the claimant's principal occupation was that of a farmer and he regularly supplemented his farm income by outside employment during the winter months. At the time of his injury, he was employed part-time by Public Auction Yards helping with livestock sales. Claimant stated he had been similarly employed the year before his injury and had earned over the course of the previous year $954.30 from such employment. These 1972 wages were broken down by calendar quarters: First quarter, $824.74; second quarter, $90.78; third quarter, $0; and fourth quarter, $36.78. Claimant further testified that his average weekly wage at the time of injury was roughly $75.00; and that he expected to work approximately the same schedule in 1973 as he had in 1972 at an hourly rate of $2.00.

Additionally, the Court had before it the employer's first report of injury which showed claimant's weekly wage

-3-

to be $80.00; the claim for compensation which showed that claimant worked 12 1/2 hours per day for three to four days per week for $75.00; and the fact that the defendant-insurer had made payments based upon a weekly wage of $45.00.

The Workers' Compensation Court entered the following findings of fact and conclusions of law:

"1.  The uncontradictory (sic) testimony of Ron Walter was that he would expect to work an average of 43-3/4 hours per week in 1973.

"2.  His average earnings in 1973 were $2 per hour.

"3.  His average weekly wage for 1973 was $87.50.

"4.  Compensation should be determined based upon the average weekly earnings of Ron Walter.

".  .  .

"That Ron Walter is entitled to receive benefits for permanent partial disability based upon his average anticipated earnings of $87.50 per week from the date of his last payment until changed by order of this court."

The issues before us are:

(1)  Whether the Workers' Compensation Court correctly computed the average weekly wage of claimant at $87.50;

(2)  Whether the payment of permanent partial disability benefits for an indefinite period of time was proper; and

(3)  Whether the Workers' Compensation Court erred in returning the files of the Workers' Compensation Court without receiving additional medical testimony.

We shall discuss each issue in turn.

This accident occurred in February 1973. Therefore, the applicable statute (since repealed) in effect was section 92-703, R.C.M. 1947, as amended by Ch. 207, Sec. 3, Laws of Montana (1967). That section fixed the amount of

weekly compensation to be paid for partial disability at a percentage between 50% and 66 2/3 of "the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter." This exact percentage depends upon claimant's marital status and the number of dependents.

"Wages" as used in then section 92-703, R.C.M. 1947, was defined in then section 92-423, R.C.M. 1947, as follows:

> "'Wages' mean the average daily wages received
> by the employee at the time of the injury
> for the usual hours of employment in a
> day, and overtime is not to be considered."

We considered the term "average daily wage" in Mahlum v. Broeder (1966), 147 Mont. 386, 412 P.2d 572, where we stated:

> ". . . [T]hat the first step in the formula
> for compensation is to determine the
> average daily wage. This is a simple
> arithmetical computation of dividing a
> man's earnings over a reasonable period
> of time by the total number of days he
> worked, excluding all overtime. What
> is a reasonable period of time, of course,
> depends on the circumstances of each case.
> The period must be sufficiently long to take
> into account seasonal fluctuations for hours,
> wage rates, vacations, and any other factors
> which may materially affect the average daily
> wage." 147 Mont. at 394-95, 412 P.2d at 576-77.
> (Emphasis added.)

The insurer contends that, under the foregoing case, and the decision in Infelt v. Horen (1959), 136 Mont. 217, 346 P.2d 556, that the Workers' Compensation Court in this case was required to take the full earnings of the claimant for the previous year, $954.30, and divide the same by 52 weeks, to arrive at an average of $18.36 per week. The result to the claimant would be that instead of receiving a percentage of $87.50 per week as found by the Workers' Compensation Court, he would receive a percentage of $18.36.

Whatever we may have said in previous cases, it appears clear that the intent of former section 92-703, R.C.M. 1947, with respect to partial disability, was to compensate the injured employee by a percentage of the "difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter". In reality, the section sets up a test of loss of earning capacity. It is apparent here that the claimant did in fact lose earning capacity by virtue of his compensable accident. Not only was he unable to work fully at his job in the sales yard, but in the operation of his farm, he found himself in a situation where he could not lift weights in excess of 25 to 30 pounds and had to pay other help to perform jobs that he usually performed. He definitely suffered a loss of ability to earn wages. As we said in Mahlum, supra, the determination of his average daily wage depends upon the circumstances of each case. We agree with the Workers' Compensation Court that in this case a determination that his average daily wage would result in earnings of $87.50 per week was fairly computed and is within the objective of such Workers' Compensation statutes. The ultimate objective of such statutes is to reflect fairly the claimant's probable future earning loss. 2 Larson, Workmen's Compensation Law, §60.11 at 10-363.

When it is considered that the claimant's injury adversely affected not only his ability to work in the salesyard, but his ability to be an effective farmer as well, the contention that the Workers' Compensation Court awarded claimant a "windfall" must be rejected. His working capacity was certainly reduced and his former ability to earn $87.50 per week is established in the evidence.

-6-

The second issue brought by this appeal is the ruling by the Workers' Compensation Court that compensation is to be paid to the claimant "from the date of his last payment until changed by order of this court." This is error and must be corrected on remand.

The Workers' Compensation Court concluded the claimant was "entitled to receive benefits for permanent partial disability." Neither section 92-703 nor section 92-709, R.C.M. 1947, of the Workers' Compensation Act relating to partial disability as they read at the time of claimant's injury contain any authorization for an open-ended award of compensation.

Section 92-703 provided that compensation be paid not longer than 500 weeks subject to the proviso that "compensation for partial disability resulting from the loss of or injury to any member shall not be payable for a greater number of weeks than is specified in section 92-709 for the loss of such member." Under section 92-709 claimant's injury to his right knee entitles him to no more than 200 weeks of compensation. Jensen v. Zook Brothers (1978), _____ Mont. _____, 582 P.2d 1191, 1194, 35 St.Rep. 1066, 1070; Johnson v. Industrial Accident Board (1971), 157 Mont. 221, 224, 483 P.2d 918, 920.

The third issue relates to insurer's contention that the Workers' Compensation Court should have received additional medical evidence which would assign a percentage of disability based on the injury of claimant's knee.

The Workers' Compensation Court stated at the close of the evidence that, "I think there has been some pretty convincing testimony here."

The trial judge was obviously referring to the evidence before him that claimant was unable to handle

the work in the salesyard or the work he had performed on his farm; the evidence of claimant's wife as to his inability to perform his usual farm work and the pain he suffered; and the medical evidence that was in fact before the court. It is not necessary that in determining disability, the Workers' Compensation Court resort solely to medical evidence. We held in Robins v. Anaconda Aluminum Co. (1978), _____ Mont. _____, 575 P.2d 67, 71, 35 St.Rep. 213, 218:

> "We are of the opinion that the question of disability is not a purely medical question. In 3 Larson, Workmen's Compensation Law, §79.53, it is pointed out:

> "'. . . Disability is not a purely medical question: it is a hybrid quasi-medical concept, in which are commingled in many complex combinations the inability to perform, and the inability to get, suitable work . . .'"

There was sufficient evidence before the Workers' Compensation Court to support its finding of disability.

It should be remembered there are safeguards built into the Workers' Compensation Law in Montana. In cases of enumerated or scheduled injuries under section 92-709, a loss such as here is subject to the limitations set forth in the schedule in section 92-709; further, the Workers' Compensation Court retains jurisdiction to reduce or terminate disability payments to meet changing conditions under section 92-713, R.C.M. 1947, now section 39-71-739 MCA.

The order of the Workers' Compensation Court is modified to limit claimant's payments for permanent partial disability to a maximum of 200 weeks. In all other respects, the judgment is affirmed. Costs to claimant.

_____
Justice

-8-

We Concur:

------------------------------
Chief Justice

John Conway Harrison

------------------------------

John C. Sheehy

------------------------------
Justices

Mr. Chief Justice Frank I. Haswell did not participate in this cause.