WILLIAM M. INFELT, Claimant and Appellant, v. MERLYN J. HOREN and CORCORAN PULPWOOD COMPANY, Employers, and INDUSTRIAL ACCIDENT BOARD and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY of Wisconsin, Defendants and Respondents.

No. 10007.

Submitted September 17, 1959. Decided October 28, 1959.
Rehearing Denied December 2, 1959.
346 Pac. (2d) 556.

218

See **C. J. S.** Workmen's Compensation, § 295.

George Niewoehner, White Sulphur Springs, for appellant.

Keller & Magnuson, L. V. Harris, Helena, for respondents. Paul T. Keller and L. V. Harris, argued orally.

MR. JUSTICE ANGSTMAN:

This is an appeal by claimant from a judgment of the district court of Gallatin County, affirming the findings and conclusions of the Industrial Accident Board in a case involving workmen's compensation.

The application for compensation involved two separate accidents.

The first accident occurred on February 11, 1952, while claimant was employed by the Corcoran Pulpwood Company in Gallatin County which operated under Plan II of the Compensation act and was insured by defendant the Employers Mutual Liability Insurance Company of Wisconsin. This accident con-

cededly arose out of and in the course of claimant's employment with the Pulpwood Company. Claim for compensation was regularly allowed and paid at the rate of $22.74 per week for a period of 12-6/7th weeks. The only question involved so far as this accident is concerned is whether the Board was justified in ceasing payments when it did.

The employer contends that the action was proper because of section 92-703, R.C.M. 1947, which, as amended in 1951 and so far as applicable here, provides that "where the injured employee has a wife * * * who would be entitled to compensation in case of his death, * * * (55 %) of the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter, subject to a maximum compensation of * * * ($23.50) per week."

The record shows that claimant was 61 years of age when this accident occurred. He was employed in cutting timber, and while so doing a log rolled over him and he was injured. He was hospitalized for about 6 weeks and on crutches for about two months thereafter. He returned to work and attempted to carry on as usual but the record shows he was still partially disabled and was unable without help to do the work that he formerly had been able to perform. He paid his brother "between $20 and $35 a week" to help him do his work. Also other men helped claimant gratuitously by carrying his saw which the record shows claimant was unable to do himself.

The real point of difference between the parties so far as the first accident was concerned depends upon what wages claimant received at the time of the injury and what he was able to earn thereafter within the meaning of section 92-703.

Defendant contends that at the time of the injury claimant was receiving $41.17 per week and after the injury, even though he paid his brother $35 per week that he still received net wages of $65 per week.

Claimant's view is that at the time of the injury he was earning and capable of earning $100 per week if employed full

time and after the injury and after he returned to work he was not able to obtain as wages the $100 per week unless he paid out $35 to his brother and received help from his fellow workmen. Claimant testified as follows:

"Q. What were you making just before the first time you were hurt in February 11th, 1952? A. Well, right at that time I wasn't making too much because it was too deep a snow, but I made up to a hundred and sometimes better a week before that.

"Mr. Swanberg: Well, the record shows that he was a piece work cutter and his average for the last quarter to February 8, 1952, was $41.17 per week. Is that about right, Mr. Infelt?

"Witness: Yah. In the last part, yes.

"Q. Yah, but he said, Mr. Swanberg said, that the average for the last quarter to February 8th, 1952, was $41.17? A. I must have made more than that. I don't know; I don't remember now.

"Q. Well, now is your chance to tell us what your version of the thing is? A. Well I know I made better money than that all the time.

"Q. Well, what were you capable—what were you able to earn then and what were you earning when you didn't have the handicap of some particularly bad weather? A. Well, I'm sure I was making around ninety to a hundred and some dollars a week because I was one of the top men over there for pulp."

Obviously, it is unfair to measure claimant's wages at the time he was injured by the amount received weekly when the snow was so deep that he couldn't work. There is no evidence in the record to dispute his testimony that he earned as much as $100 per week when the weather was such that he could put in a full week's work.

" 'Wages' mean the average daily wages received by the employee at the time of the injury for the usual hours of employment in a day, and overtime is not to be considered." Section 92-423.

As overtime is not to be considered, so too, enforced idleness because of weather conditions should not be considered in computing the average weekly wage.

"Where there is no applicable provision prescribing a formula or method for determining an employee's average weekly earnings under particular circumstances, the determination must be based on the employee's actual earnings during a preceding period sufficiently long to include the usual seasonal fluctuations in hours of employment, wage rates, etc., to establish reasonably and fairly his true earning capacity." 99 C.J.S. Workmen's Compensation, sec. 293, p. 991.

Since claimant's statement that he was receiving $100 weekly stands uncontradicted that must be taken as the measure of his earnings before his injury when working full time.

After he returned to work he could not obtain that much without paying to his brother the sum of $30 per week. That amount is clearly lost to claimant because of his injuries. He asks but 55% of that amount or $16.50 weekly from May 11, 1952, to December 20, 1954, or a period of 136 weeks or a total sum of $2,240. Claimant ought not to be penalized for making a bona fide attempt to work.

We recognized a claimant's right to compensation in Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 Pac. (2d) 340, even though he might have been receiving as much money after the accident as before. That case is particularly applicable here where claimant not only had gratuitous services from fellow workmen but had to pay to his brother $30 per week in order to make as much as he did before his injuries on February 11, 1952.

The Supreme Court of Kansas in Raffaghelle v. Russell, 103 Kan. 849, 176 Pac. 640, 641, had this question under consideration and disposed of it by saying: "But it would never do to say that the courageous workman who sticks to his task notwithstanding his pain and injury is to be penalized for so doing. Neither would it do to say that an injured workman who in pain and

distress and with the gratuitous help of his fellow workmen can still earn as much as he was wont to do before his strength and vigor were impaired is not entitled to compensation. A workman who is injured is not compelled then and there to lay off for two weeks to protect his rights under the act. The soldier who is wounded, but who still 'carries on,' is looked upon as a hero; the injured workman who likewise attempts to 'carry on' will lose nothing by so doing when his rights become a matter of judicial determination.''

To the same effect is McGhee v. Sinclair Refining Co., 146 Kan. 653, 73 Pac. (2d) 39, 118 A.L.R. 725, and cases therein cited, and compare Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, 97 A. (2d) 813.

It follows that claimant is entitled to be paid the sum of ▮ $2,240 by the Employers Mutual Liability Insurance Co. of Wisconsin, the same representing the sum of $16.50 per week for a period of 136 weeks, being the period from May 11, 1952, to December 20, 1954.

As to the second injury, the facts and the law applicable are ▮ comparatively simple. Claimant was awarded and paid compensation from December 20, 1954, the date of the second injury to August 15, 1955, at the rate of $26.50 per week. The Board at first stopped payment on April 18, 1955, and upon complaint of claimant it renewed payments until August 15, 1955, at which time payments were stopped. On the hearing held on October 22, 1957, the Board renewed the payments but started the payments as a result of this hearing from July 18, 1957, and ordered them to continue for not exceeding 500 weeks in all. There is no question raised as to the validity of the award of $26.50 per week for not exceeding 500 weeks.

Claimant contends that the payments should have commenced where they left off, namely, on August 15, 1955. As a consequence the only issue as to this injury is whether claimant should be paid $2,650, being $26.50 per week for the 100 weeks between August 15, 1955, and July 18, 1957.

There was no issue between the parties that any change in claimant's condition had taken place between August 15, 1955, when the payments ceased and the day of the hearing. There was no showing made of any such change. The point at issue on claimant's application was not that there had been a change in his disability since August 15, 1955, and as of July 18, 1957, but the only point at issue was whether his disability for which he had been paid up to August 15, still continued.

Defendant Board contends that claimant waived his right to compensation for the period between August 15, 1955, and July 18, 1957, because of his delay in making application. With this we do not agree. It is true that when the Board discontinued payments on August 15, 1955, it advised plaintiff that he should make out a report if further payments were claimed. Up to that time all of claimant's dealings with the Board were made by him personally and without the benefit of counsel. On March 2, 1957, he appointed his present counsel to represent him.

There is no basis for the contention that claimant forfeited any rights because of delay in asserting them. After a timely claim has been made and acted upon as here, the Board has continuing jurisdiction under section 92-713, which reads:

"If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established, or compensation terminated in any case, where the maximum payments for disabilities as provided in this act have not been reached, adjustments may be made to meet such changed conditions by increasing, diminishing or terminating compensation payments in accordance with the provisions of this act."

It is the command of our statutes that compensation whether for temporary disability (section 92-701), total disability permanent in character (section 92-702) or partial disability (section 92-703), shall be paid "during the period of disability," not exceeding however the maximum of 500 weeks. There is no pro-

vision for deferring payments where, as here, there has been delay in asserting them.

The issue is important to claimant in that he is now about 67 or 68 years of age and may not live out the 500 week period if that period be held to have been interrupted between August 15, 1955, and July 18, 1957.

We hold that claimant's contention that he is entitled to $2,650 being compensation at the rate of $26.50 per week for the 100 weeks starting August 15, 1955, and ending July 18, 1957, must be upheld.

The cause is remanded with directions to modify the judgment in accordance with the views herein stated.

MR. JUSTICES BOTTOMLY and ADAIR concur.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES dissent.

On Motion for Rehearing.

MR. JUSTICE ANGSTMAN:

The Employers Mutual Liability Insurance Company has filed a petition for rehearing herein in which it is asserted that the court's opinion overlooks section 92-712 which reads:

"Should a further accident occur to a workman who is already receiving compensation hereunder, or who has been previously the recipient of a payment or payments under this act, his further compensation shall be adjusted according to the other provisions of this act, and with regard to his past receipt of compensation."

As pointed out in the opinion, claimant's first industrial accident occurred on the 11th day of February, 1952, and the second one on December 20, 1954.

The Mutual Liability Insurance Company was and is liable ■ to claimant for all compensation due him under the first accident or until the second accident occurred. It is not liable to claimant for compensation arising by reason of the second

accident. If section 92-712 has any application to facts such as we have here it would affect the award for the second accident only and would not affect the liability of the Insurance Company under the first accident.

Hence, the Insurance Company is not affected by section 92-712.

The Insurance Company also asserts in its motion that the court overlooked that part of section 92-826 which reads:

"The board shall have continuing jurisdiction over all its orders, decisions, and awards, and may, at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter, or amend any such order, decision, or award made by it upon good cause appearing therefor. Provided, that the board shall not have power to rescind, alter, or amend any final settlement or award of compensation more than four (4) years after the same has been made, and provided further that the board shall not have the power to rescind, alter or amend any order approving a full and final compromise settlement of compensation."

There is no basis in the record to sustain the contention that there ever was a final settlement or award in this case.

It is true that claimant signed a receipt on which was written the following:

"Do not sign this receipt unless you intend to end payments of compensation and close the case."

There had been no hearing with respect to any final settlement. There is nothing in the record to indicate that claimant knew what the receipt stated when he signed it.

The first part of section 92-826 gives the board continuing jurisdiction to amend its orders and awards and a claimant does not surrender his right to seek such modification by merely signing a receipt in which there is language suggesting that the intention is to close the case when in fact there had been no discussion or hearing purporting to give the award the semblance of finality.

The motion for rehearing is denied.

MR. JUSTICES BOTTOMLY and ADAIR concur.