JACK W. SIMONS, Claimant and Appellant, v. C. G. BEN-
NETT LUMBER COMPANY, Defendant and Appellee.

No. 10771

Submitted April 13, 1965. Decided August 3, 1965.

404 P.2d 505

Lee A. Jordan (argued), Missoula, for appellant.

Mulroney, Mulroney & Delaney, Dexter L. Delaney (argued), Missoula, for appellee.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

The plaintiff, a 40 year old married father of three children was injured on August 2, 1960, while employed at St. Regis, Montana by the C. G. Bennett Lumber Company, a Plan one carrier.

The employer-defendant filed a first report of injury on August 22, 1960, and gave the cause of injury stating that the claimant was sitting on a sawmill carriage when it hit the end bumper and caught him off balance.

The claimant-employee filed his claim for benefits on September 28, 1960, and described the accident as follows:

"While running the carriage, the sawyer ran into the bumper with the carriage, snapping my neck in the nature of a whiplash."

The claimant worked the rest of his shift on August 2, 1960, worked a full shift on August 3, 1960, and until noon on August 4, 1960, when the mill was temporarily shut down. The claim for benefits indicates that the claimant was working eight hours a day at an hourly salary of $2.45.

On August 4, 1960, in the afternoon the claimant went to Dr. Braun at the Western Montana Clinic in Missoula, Montana. Dr. Braun examined the claimant either two or three times between August 4th and August 7th at which time Dr. Braun referred the claimant to Dr. Kildow. On August 12, 1960, Dr. Kildow referred the claimant to H. Eugene Miles, a physical

therapist, who filed a report with the Industrial Accident Board describing the injury as a "Whiplash fracture to the left cervical area." This initial report was received by the Industrial Accident Board on August 15, 1960.

On October 17, 1960, the claimant upon the advice of Dr. Kildow was referred to Dr. McKinstry, who in turn requested consultation with his present associate Dr. McDonald. Dr. McKinstry had placed the claimant in a neck brace, which the claimant wore for about six weeks. On November 29, 1960, claimant was hospitalized for six days until December 3, 1960.

On or about December 3, 1960, claimant first expressed concern about a severe low back pain. During the winter of 1960 and 1961, claimant was treated or examined on twelve different occasions by Dr. McKinstry, who placed him in a sacroiliac brace and he also received treatment from a nature therapist at Kellogg, Idaho. He further had some 28 treatments during this period from a Dr. Rogers, a chiropractor in Superior, Montana.

On April 6, 1961, Dr. McDonald again examined the plaintiff and stated:

"His low back pain was his most serious complaint at the time of our examination. There had been no change in his back symptoms in the six weeks prior to this examination. He wore a sacroiliac back brace for two weeks intermittently and felt that this made him worse. * * * The pain in his lower back is there all the time. * * * Associated with the low back pain there is numbness in the left leg which goes down the outside of the left leg to the little toe. He also notices numbness in the front of the right hip."

On April 26, 1961, plaintiff wrote a letter to the Industrial Accident Board in which he complained about both his neck and low back injuries.

On April 29, 1961, a hearing was held in Missoula before the Industrial Accident Hearing Board, and on October 9, 1961, the Board made its decision that the claimant was making an aver-

age weekly wage of $98.00, that he was entitled to a temporary disability of 10 percent for 50 weeks from and after July 29, 1961, he having been previously paid from August 2, 1960, to July 29, 1961.

The Board found that the evidence established that the claimant suffered from a neck injury which subsided, and, *also from a back sprain which has resulted in a permanent partial disability* amounting to approximately 10 percent. The order further specified that it was a full and final award. From the Board's decision the defendant did not appeal, however, on October 19, 1961, the claimant filed a petition for rehearing which was by the Board denied on October 23, 1961. Thereafter on November 7, 1961, the claimant appealed to the district court of Mineral County, and the matter was heard on August 5, 1963, before the Honorable Walter R. Flachsenhar, District Judge, and the claimant was represented by Attorney Fred Root as he had been earlier.

The court held as a finding of fact that after the date of the alleged injury on August 2, 1960, the claimant first evidenced symptoms of degenerative disk disease of his spine, the causes of which are unknown, but antedate and unrelated to employment. That no proof has been offered that the claimant's present post-operative physical condition is in any way causally related to the accident of August 2, 1960. The claimant underwent a spinal fusion operation in Spokane, Washington, on January 28, 1963, the cause of which was the degenerative disk disease aforementioned.

The claimant claims three specifications of error, being:

The Industrial Accident Board erred in each of the following respects:

(1) In establishing the claimant's pay rate at the time of injury on the basis of an eight-hour day instead of a ten-hour day as the uncontroverted evidence showed claimant was working, and in not using a six-day work week as required by House v. Anaconda Copper Min. Co., 113 Mont. 406, 126 P.2d 814;

(2)   In speculating that the claimant's back injury would heal in 50 weeks from and after July 29, 1961; and

(3)   The District Court erred in affirming the actions of the Industrial Accident Board, and in refusing to award the claimant additional benefits to cover his medical and hospital bills, and weekly compensation to cover claimant's wage loss resulting from the spinal fusion which he underwent.

In this cause we are confronted with exhaustive briefs which run the gamut of claims, counter claims, expert opinions and a plethora of matters far remote from the decisive question to be answered.

There is merit in claimant's first specification of error relating to the pay rate at the time of injury.

R.C.M.1947, § 92-422, defines the word "week" as:

" 'Week' means six working days, but includes Sundays."

R.C.M.1947, § 92-423, defines "wages" as:

" 'Wages' mean the average daily wages received by the employee at the time of the injury for the usual hours of employment in a day, *and overtime is not to be considered.*" Emphasis supplied.

■   Claimant was paid $2.45 per hour at the date of injury and was entitled to an award of six days or 48 hours per week for a total of $117.60 which is his computed wage for compensation, in conformity with House v. Anaconda Copper Min. Co., supra, and Graham v. Tree Farmers, Inc., 142 Mont. 483, 385 P.2d 83.

■■   Claimant essays to claim under the 1961 legislative increase in compensation. He cannot prevail as his compensation rate is calculated on the date of injury. See Gaffney v. Industrial Accident Bd., 129 Mont. 394, 287 P.2d 256, and Yurkovich v. Industrial Accident Bd., 132 Mont. 77, 314 P.2d 866.

Claimant contends that the Industrial Accident Board in its hearing on April 29, 1961, and its Findings and Conclusions dated October 9, 1961, stated:

"That the evidence established that the Claimant suffered from a *neck injury* which subsided and, also from a *back sprain* which has resulted in a permanent partial disability of the body as a whole amounting to approximately ten (10) percent. That as of September 1, 1961, this medical bodily impairment has prevented the Claimant from returning to work in a sawmill, which was his employment at the time of the accident. That the evidence further established that with continued light employment the Claimant's back injury should subside and enable him to return to work at his regular employment.

"That a reasonable time during which the Claimant may be expected to engage in light work and allow healing of his back is fifty (50) weeks from and after July 29, 1961.", and decided and determined that there was a low back injury and that this finding made this question res adjudicata.

Under this same contention claimant urges that the Board speculated on the gravity of the injury to the lower back.

It is to be observed that between the date of the Board hearing and the hearing in district court the claimant has experienced spinal surgery, whereas the Board considered only a back sprain presented in the evidence adduced.

Anent the contention by claimant of his claim being res adjudicata it is further observed that the claimant on November 3, 1961, filed a notice of appeal to the district court which contains the following language, "That said appeal is taken from said decisions and order so made and from the *whole thereof*.

"*That said appeal is taken for the purpose of having the unlawfulness of the original order and decision and the order denying rehearing inquired into and determined.*" Emphasis supplied.

Claimant filed within twenty days a petition for rehearing under section 92-829, R.C.M.1947, using the language above-quoted. When the district court consented to hear the additional evidence offered by claimant the cause then became a

trial de novo as is provided for in section 92-834, R.C.M.1947, which states in part:

"The court may, upon the hearing, for good cause shown, permit additional evidence to be introduced, but, in the absence of such permission from the court, the cause shall be heard on the record of the board, as certified to the court by it. The trial of the matter shall be de novo, and upon such trial the court shall determine whether or not the board regularly pursued its authority, and whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case."

In Shugg v. Anaconda Copper Min. Co., 100 Mont. 159, 166, 46 P.2d 435, 438, this court stated: "The grounds upon which a rehearing may be demanded are those going to the merits of the order or decision rendered, and such an application challenged the jurisdiction of the board, the sufficiency of the evidence to support the findings, or raises questions of fraud, newly discovered evidence, or that the order is, on the showing made, 'unreasonable.' Under section 2955 [Rev. Codes 1921, now R.C.M.1947, § 92-829], therefore, the aggrieved party *is in the same position as one moving for a new trial in an ordinary case,* and his application relates only to the condition and situation prevailing at the time of the original hearing.

"If, after the order is made, there is a change in the claimant's condition rendering the original order inapplicable to the then existing condition of the injured party, the board may, upon application of any interested party, review the matter, hear further evidence, and modify the original order to meet the present situation, without regard to either time provision or the grounds of rehearing specified in section 2955, above."

In the instant cause, the Board used the following language in its finding, "That the evidence further established that with continued light employment the claimant's back injury should subside and enable him to return to work at his regular employment. That a reasonable time during which claimant may

be expected to engage in light work and allow healing of his back is fifty (50) weeks from and after July 29, 1961."

Claimant here, now takes the position that his original sworn claim and proof of injury did not reconcile with the facts and that his claim of September 26, 1960, was in error.

One example, the uncontroverted proof was as shown before, that claimant worked ten-hour shifts, six days per week, rather than eight hours, five days per week. Additionally, the emphasis on the injury itself, changed from simply "snapping my neck in the nature of a whiplash" to an injury to the lower back, the neck injury having subsided.

As to the lower back injury, we have previously noted that the Industrial Accident Board had found, in addition to a neck injury, a "back sprain which has resulted in a permanent partial disability." This finding was based upon testimony and medical reports before the Board, all of which concerned the injury resulting from the accident of August 2 concerning "the neck in the nature of a whiplash."

We have carefully studied all of the testimony, exhibits and reports, and find that it can be fairly said that while the neck was involved mainly, also a back sprain resulted from the accident, or, to put it another way, there was substantial evidence sufficient to support the Board's finding. Now then, the defendant did not appeal and we can only assume that the defendant was, at that time, satisfied with the finding.

Too, we have testimony or reports from Drs. Kildow, McKinstry, McDonald, Landers, and McIntosh and finally a deposition of Dr. Dunlap, who performed surgery.

Dr. Kildow ordered physical therapy for a "whiplash injury to left cervical area."

Dr. McKinstry and Dr. McDonald confirmed and treated the neck injury and first noted the lower back injury some four months after the accident while claimant was in the hospital under traction for the neck injury. Both of these doctors felt that further examination by a neurosurgeon was desirable.

Dr. Landers, a neurosurgeon, upon referral from Dr. Mc-Kinstry, on May 24, 1961, reported in part:

"This patient's chief complaint was that of pain originating in the low back, radiating into the left hip area * * *.

"Past history reveals that he suffered an injury to his neck and possibly his low back on August 2, 1960, at which time he was riding on the carriage in a sawmill and in doing this he rides sideways and states he was thrown rather hard to the right. Following the injury he was aware of some stiffness and soreness in his neck and subsequently was treated with a head halter and cervical traction for several days. These symptoms referable to the neck have gradually cleared but as time has gone on he has been aware of pain in the low back * * *."

Dr. McIntosh, a neurosurgeon, on August 3, 1961, reported the same as Dr. Landers but suggested the claimant return to work and if more severe pain developed a myelogram be done.

Dr. Dunlap of Spokane, another neurosurgeon, finally did perform a myelogram and operated for a spinal fusion in January 1963. His diagnosis was a degenerative disk disease at the lumbrosacral joint. Dr. Dunlap's examination and operation occurred *after* the Industrial Accident Board's determination but prior to the district court's determination. Dr. Dunlap testified by deposition. His testimony related the same history as previously set out and described the operation. He was asked a hypothetical question and gave his opinion that: "I feel that on the basis of the mechanism of the injury as described, and based upon the findings at the time of examination, that more likely than not the accident as described *aggravated the disease* in Mr. Simons' back." Emphasis supplied.

When asked concerning his disability to work, Dr. Dunlap said in effect it was too early to tell.

On cross-examination, Dr. Dunlap emphasized that the claimant had a degenerative disease, pre-existing the accident and that claimant was thus more susceptible to injury. Dr. Dunlap

admitted that even relatively slight twists, flexation or extension of the spine could do the damage.

In addition to Dr. Dunlap's deposition, the appeal to the district court from the decision of the Industrial Accident Board considered other testimony. By this time the claimant had new counsel. New counsel asserted he had new and substantial evidence to offer. The claimant testified again, establishing ten hours a day work with two hours being overtime. He also brought out, both in direct and on cross-examination his activities, including bowling every week until the operation, hunting and fishing, running a rock quarry, operating a laundry, conducting a Christmas tree business, running a small farm, driving a school bus, working as a carpenter, operating a gold dredge. In each instance, claimant attempted to minimize his activity or participation, but it can be fairly said that he had many enterprises going during the time he would have others believe he was totally incapacitated.

Following conclusion of the testimony, the district judge entered findings of fact as related before. These findings rejected the back trouble as being unconnected with the accident of August 2, 1960.

To reach this finding, necessarily the district judge had to reject or disbelieve Dr. Dunlap who gave his opinion that the accident was causally connected to aggravation of the degenerative disk. No other medical testimony to rebut this was offered.

We hold, under the circumstances here, the finding of the Industrial Accident Board that a back sprain which has resulted in permanent partial disability, must be affirmed and that the district court was in error in making new findings in the face of Dr. Dunlap's uncontradicted opinion.

Because the Industrial Accident Board estimated a 50-week healing period that proved inadequate, and because much of what was presented to the trial court on appeal as to wages, work, medical proof, and other activities has never been con-

sidered by the Industrial Accident Board, we are ordering the case remanded to the Industrial Accident Board so that it may further consider the factual situation concerning the claimant and conduct further investigation and hearings if it deems it necessary.

Accordingly, the judgment of the district court is reversed and the cause remanded to the district court with directions to remand the case to the Industrial Accident Board so that it can conduct further investigation and hearings if it deems it necessary.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES concur.