No. 13772

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

BETTY HUTCHISON,

Claimant and Respondent,

-vs-

GENERAL HOST CORPORATION,

Employer and Appellant,

and

LIBERTY MUTUAL INSURANCE CO.,

Defendant and Appellant.

---

Appeal from:   Workers' Compensation Court
Honorable William E. Hunt, Judge presiding.

Counsel of Record:

For Appellants:

Garlington, Lohn and Robinson, Missoula, Montana
Robert E. Sheridan, Jr. argued, Missoula, Montana

For Respondent:

Hirst and Dostal, Missoula, Montana
John A. Dostal argued, Missoula, Montana

---

Submitted:  January 19, 1978

Decided: AUG 3 1978

Filed: AUG 3 1978

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Liberty Mutual Insurance Company, the insurance carrier for the employer, General Host Corporation, appeals from an order of the Worker's Compensation Court determining claimant, Betty Hutchison, had suffered a compensable injury and was entitled to compensation and medical benefits.

Liberty Mutual first contends claimant suffered no compensable injury because she failed to establish her injury was a "tangible happening of a traumatic nature from an * * * unusual strain" within the meaning of section 92-418, R.C.M. 1947. Liberty Mutual also contends that the Worker's Compensation Court made several errors in determing the weekly benefits to which claimant was entitled and the Court erred in allowing claimant's medical expenses introduced in evidence as well as unlimited future medical expenses. The claimant agrees in part that the Court erred in using statutes not in effect at the time of the injury to award weekly benefits and medical benefits and agrees the order should be changed to reflect the application of the correct statutes. The last contention of Liberty Mutual is the Court improperly assessed a 10 percent penalty pursuant to section 92-849, R.C.M. 1947.

Claimant was a part-time employee of Eddy's Bakery in Missoula, a subsidiary of the General Host Corporation. While dumping pans of buns, pulling racks and pulling pallets she reached up and slipped, but did not fall. She felt a twinge of pain in her back. She continued to work that day but experienced pain in her legs and back the following day. Over the weekend she and her husband drove to Great Falls to visit their family and she complained to her husband that her legs and back hurt. Upon their return from Great Falls on Sunday she telephoned her

foreman and told him of the injury. They discussed insurance at that time. On Monday, March 28, 1973, claimant saw a doctor concerning her injury and thereafter saw several more doctors. She lost some time from work but did work between April 19, 1973 and June 23, 1973, but finally quit work because her back was causing too much distress.

On May 2, 1974, a hearings examiner for the Industrial Accident Board (the predecessor to Workmen's Compensation Division) entered his findings and conclusions that claimant sustained an injury arising out of the course and scope of her employment and thus was entitled to compensation and benefits. On May 7, 1974, the Board entered an order that claimant was entitled to compensation benefits under sections 92-701 and 92-702, R.C.M. 1947 and to medical benefits under section 92-706, R.C.M. 1947. Apparently the issue at the hearing was confined to that of whether claimant had sustained a compensable injury. Accordingly, the order of May 7, 1974 ordered benefits were to be paid "as the facts, yet to be established, may justify."

Thereafter, Liberty Mutual refused to pay either compensation or any medical benefits. Claimant contends Liberty Mutual was aware of the minimum weekly compensation required to be paid under section 92-701, and that it should have at least started paying this minimum compensation. Claimant also contends Liberty Mutual had copies of claimant's payroll records from Eddy's Bakery and also had copies of most medical bills then existing, both contested and uncontested.

Because Liberty Mutual persisted in its refusal to pay any benefits, between the end of May 1974 and August 20, 1974, claimant's counsel wrote five letters to Liberty Mutual demanding that payments be made. In mid-August 1974 the head of the

Industrial Accident Board issued a directive to Liberty Mutual demanding that it immediately comply with the order of payment. The directive specifically pointed out that no agency or court had granted a stay order and thus that any appeal of Liberty Mutual's would not stay the payment of benefits. Nonetheless, Liberty Mutual still refused to pay any benefits and has not paid any benefits to this date.

For quite some time, the case was in a state of limbo caused in part from the switchover from the Industrial Accident Board to the Workers' Compensation Division and the creation of a separate Workers' Compensation Court to handle nothing but industrial injury claims. A hearing was finally held in January 1977 before the Workers' Compensation Court. It is from the findings and conclusions entered after the hearing that Liberty Mutual appeals.

Liberty Mutual first contends claimant did not sustain a compensable injury under section 92-418, R.C.M. 1947. The argument is although claimant alleges she injured her back while in the scope and course of her employment, she is unable to relate the unusual strain to a tangible happening of a traumatic nature. Liberty Mutual argues claimant did not relate the strain to any particular task or function she was required to perform, and could not relate the strain to any particular time period within the working day.

It is true claimant was unable to state exactly what time during the day she suffered the twinge in her back, but we do not feel one is compelled to punch a time clock at the time of injury in order to qualify for coverage under the Act. It is enough that she suffered the twinge in her back while working and testified what she was doing at the time.

On direct examination claimant testified what she was doing at the time she felt the twinge in her back. She testified

-4-

she slipped on the floor while performing the work but did not know why she slipped. She continued to work for the remainder of the shift although her back occasionally bothered her. On cross-examination she testified:

"Q. Specifically, on the date of March 23, what specific thing did you do that day and suddenly become aware that your back bothered you? A. As close as I can remember, I was pulling the red pallets to put them on the dolly to take the buns to the racks, and they were high above my head. I was pulling and pushing to get them down to where I could get them, and I kind of slipped.

"Q. On the floor? A. Yes, I didn't go all the way down, I just twisted and kind of changed my balance and I got a little twinge.

"Q. Are you aware of what time of day this happened? A. No, I'm not."

In attacking claimant's credibility Liberty Mutual contends she is unworthy of belief because her co-workers on the day involved did not know she was injured and because she later made a statement to her foreman that she injured her back while changing a flat tire. This testimony, however, does not establish claimant was not injured. Moreover, it was within the province of the Workers' Compensation Court to give this evidence the weight to which it thought entitled. Obviously, the Court did not think the evidence was entitled to much weight.

One co-employee testified she did not see any injury take place and did not know of claimant's injury until after claimant had called in to report it. She asked claimant how she injured her back and apparently claimant did not state she injured it while she was lifting or straining. The second co-employee worked closely with claimant on the day involved and she did not know claimant had injured herself. When they later discussed claimant's problem claimant was not specific about how she injured her back. However, it does not appear co-employee

-5-

ever asked claimant how she injured her back. The third co-employee testified she worked on a different floor than claimant on the day involved with the exception of one hour and therefore would not have known of the injury. This testimony does not establish claimant was not injured in the manner in which she testified.

After claimant had reported the injury to her employer, she still had back problems and did not want to report to work. On one occasion she called the foreman and told him she could not make it to work because she had injured her back while changing a flat tire. During the hearing claimant admitted she had given this story to the foreman, but had fabricated it because she thought she would lose her job if she told her employer she could not come to work because of the injury sustained on the job. She agreed she had never been threatened with the loss of her job. A friend of the claimant testified she had helped claimant fabricate the story.

Whatever the situation may be, we again emphasize this evidence is strictly within the province of the lower court to resolve. Our function is simply to determine if there is substantial evidence in the record to support the lower court's findings and conclusions. Moffett v. Bozeman Canning Co., et al. (1933) 95 Mont. 347, 26 P.2d 973. On the basis of the record before us there certainly is substantial evidence to support the lower court's order.

Liberty Mutual next contends Workers' Compensation Court applied the wrong formula in awarding weekly compensation benefits to claimant. Although available for work on a full-time basis, claimant was called for work by Eddy's Bakery only on a part-time basis. She did not work a regular schedule and was primarily called to work at the convenience of her employer.

-6-

During some weeks she might work only one day and other weeks she might not be called to work at all.

Claimant started working at Eddy's Bakery on August 17, 1972 and terminated on June 21, 1973. From the date of her employment until March 23, 1973, she was employed for a period of thirty-two weeks and earned $774.03. Her average weekly wage during this period of time was $24.19. The maximum weekly wage that she received during the course of her employment was $91.35. This occurred on only one occasion. In determining the weekly benefits to which claimant was entitled, the Workers' Compensation Court used this maximum figure of $91.35 and Liberty Mutual contends this was error.

Liberty Mutual contends the Court was required to use one of two wage averaging formulas in arriving at the weekly wage. It should either have averaged the total earnings over the entire thirty-two week period or it should have averaged the total earnings based on the number of weeks plaintiff actually performed work at Eddy's Bakery. In the first instance the average wages would be slightly over $24. In the second instance, the average wage would be slightly over $44. Since the minimum weekly compensation rate for claimant under section 92-701, R.C.M. 1947, was then $45, Liberty Mutual contends that claimant should have been paid only the $45 per week, rather than the $60.90, which the Court ordered by using the $91.35 figure. We conclude neither of the averaging methods offered by Liberty Mutual is required for determining the weekly compensation. Section 92-701 is not a wage loss statute; rather it is designed to provide a form of insurance to a person who is on temporary total disability.

The statutes then in effect provided for a scheme of benefits which differed depending upon the nature and permanency

-7-

of the injury. Section 92-701, R.C.M. 1947, provided compensation for temporary total disability. Section 92-702, R.C.M. 1947 provided compensation for an injury causing total permanent disability. Section 92-703, R.C.M. 1947, provided compensation for permanent partial disability. Section 92-704, R.C.M. 1947, provided compensation to the family of one who was killed in an industrial accident. In determining the benefits sections 92-702 and 92-703 required past earnings as well as future earnings to be considered before making an award of compensation. But section 92-701 requires only a minimum and maximum compensation that must be paid.

In interpreting a predecessor statute to section 92-701, this Court in House v. Anaconda Cop. Min. Co. (1942), 113 Mont. 406, 126 P.2d 814, declared the weekly compensation for temporary total disability is a form of insurance and is not to be restricted by wage averaging considerations:

> " * * * Workmen's compensation was provided--not to pay damages to the injured employee, in which case the actual wage received would, of course, be the conclusive measure of the compensation to be paid, as that would be the loss, plus pain and suffering--but rather the purpose of the Act was to provide a form of insurance, place the loss on the industry and to insure that the injured workmen would not be charges on the public."

House has remained the law. Simons v. C. G. Bennett Lbr. Co. (1965), 146 Mont. 129, 404 P.2d 505; Graham v. Tree Farmers, Inc. (1963), 142 Mont. 483, 385 P.2d 83. To apply Liberty Mutual's theory to section 92-701 would be to deny meaningful benefits to many workers who were injured before they were fortunate enough to build up an employment history with a particular employer. It would confine a great many working people to receiving only the statutory minimum weekly allowance for temporary total disability.

Liberty Mutual relies on the case of Infelt v. Horen, et al. (1959), 136 Mont. 217, 346 P.2d 556 in asserting claimant's wages must be averaged to arrive at a figure of weekly compensation for total temporary disability. But Infelt was not a case involving total temporary disability. The issue concerned a case of permanent partial disability under the predecessor statute to section 92-703, R.C.M. 1947. The statute set out a rate of compensation to be calculated by " * * * difference between the wages received at the time of the injury and the wages that such injured employee is capable to earn thereafter, * * *" Clearly, Infelt involved an earning capacity issue and has no application to the facts of this case.

In determining the amount of temporary total disability weekly wages must first be determined. Once that is done the wage figure is applied to the factor contained in section 92-701, R.C.M. 1947 to arrive at the actual amount weekly compensation to which one is entitled. Under section 92-423, R.C.M. 1947 "wages" is defined as the "average" wages earned for the "usual hours of employment in a day." Here, the working day was defined by the union contract as 7.5 hours (anything more than this was overtime). Prior to her injury claimant had worked an entire week at 7.5 hours per day. The hourly wage rate was $2.426 per hour. Accordingly, under section 92-423, R.C.M. 1947, the "usual hours of employment in a day" was 7.5 hours multiplied by the hourly wage rate of $2.426 per hour. Under section 92-422, R.C.M. 1947, a "week" for the purposes of fixing compensation is considered to be "five (5) working days". Accordingly, the daily wages multiplied by 37.5 hours in the work week, came to $91.35. We find no error.

The actual weekly benefits that the Workers' Compensation Court determined claimant was entitled to was $60.90 per week.

-9-

This was arrived at by multiplying the $91.35 by the 66 2/3

percent factor contained in section 92-701.1.  Section 92-701.1

however, was not in effect at the time and thus the Court

should have used its predecessor statute, section 92-701,

which had a compensation factor of 66.5 percent for one in

the claimant's position.  Claimant agrees that the wrong

statute was used.  The weekly compensation therefore, must

be amended to reflect use of the proper statute.  The weekly

compensation to which claimant is entitled under temporary

total disability is $57.09.

After finding her claim compensable the Workers'

Compensation Court awarded unlimited medical benefits under

section 92-706.1, R.C.M. 1947.  This statute went into effect

on July 1, 1975, more than a year after claimant's injury.

Liberty Mutual contends that the Court followed the wrong

statute and should have applied section 92-706, R.C.M. 1947,

which was in effect at the time.  The claimant concedes that

the Court applied the wrong statute but argues that the cir-

cumstances of this case require that section 92-706 be applied

to allow claimant the maximum possible medical coverage.

Section 92-706 provides:

> "During the first thirty-six (36) months after the
> happening of an injury, the employer or insurer
> or the board, as the case may be, shall furnish
> reasonable services by a physician or surgeon,
> reasonable hospital services or medicines when
> needed, and such other treatment approved by
> the board, not exceeding in amount the sum of
> twenty-five hundred dollars ($2,500.00) provided,
> however, that in cases of total disability
> when apportionment of such sum does not meet
> all hospitalization expenses, the board may
> allow an additional amount for additional
> hospital and medical expenses as in special
> cases it may deem proper."

As far as we can tell from the record, claimant has

been disabled since her injury.  During this time she has

submitted medical bills in the amount of $1,833.37 and Liberty

-10-

Mutual has not paid them. Claimant cannot pay for them herself. She needs a back operation which at the time was estimated conservatively to cost $3,000. We would not venture a guess as to what the cost may be today. Not having the resources, claimant has not been able to have the recommended surgery even though an operation on her back was advised as soon as possible.

The general thrust of Liberty Mutual's argument is if it must pay medical expenses, then that duty ended three years (36 months) after the date of the injury. Accordingly, it should only be held responsible for those medical and hospital expenses incurred during the 36 months immediately following claimant's injury. Under section 92-706, R.C.M. 1947, the former Industrial Accident Board was authorized in its discretion, to allow additional amounts for hospital and medical expenses in special cases. One of the conditions of a special case is that it must be a total disability. Here, we do not know if claimant is totally disabled. While it appears she is in need of a spinal fusion we cannot say what the future holds for her in terms of the extent of disability.

It could well be that claimant's situation may amount to a special case of total disability. If so it would work an injustice to hold that since the 36 months has passed she is not eligible for consideration as a special case. After all, it has been Liberty Mutual that has been fighting this case all the way and which has steadfastly refused to recognize and pay any benefits that have been awarded to claimant, even though it has not obtained a stay order. In any event, a special case of total disability would have to be presented to the now existing Workers' Compensation Division for its consideration.

-11-

But even if it is later determined claimant is not a special case of total disability, we do not feel that in good conscience, Liberty Mutual can avoid any expenses incurred by claimant after the expiration of the 36 months from the date of the injury and which may be incurred in the future. It would be unconscionable to allow Liberty Mutual to use the court system to its advantage and thereby avoid its obligations to claimants under the Workmen's Compensation Act simply because the time has elapsed for the payment of benefits. To the extent of its statutory obligation under section 92-706, R.C.M. 1947, we hold Liberty Mutual must pay any expenses incurred after the expiration of the 36 months from the injury, or which may be incurred in the future, which are related to the injury.

Liberty Mutual also contends that the Workers' Compensation Court improperly allowed the payment of all medical bills which claimant submitted to the Court during the January 1977 hearing. The expenses amounted to $1,833.37 and the Court allowed all of them. Liberty Mutual argues many of the bills do not relate to treatment of claimant's back injury. It also contends that the bills should not be allowed because the claimant saw many doctors without being referred from the first doctor who treated her and without getting permission from the insurer before changing doctors, as required by Montana Administrative Code, §24-3. 18(22)--S18080.

Liberty Mutual has not pointed to any bills submitted by claimant that were not related to claimant's injury and we will not substitute our judgment for that of the Workers' Compensation Court. Moreover, the administrative regulation does not apply to the facts of this case. If would be an idle act for the claimant to request Liberty Mutual's permission to change

-12-

doctors when Liberty Mutual had in fact denied the compensability of the claim. Indeed, Liberty Mutual would probably have taken the position that since claimant's claim was not compensable the claimant did not have to get the insurer's permission. Perhaps Liberty Mutual feared that to grant permission to change doctors would impliedly recognize the compensability of claimant's injury.

This Court recently ruled the administrative regulation involved cannot prohibit a claimant from going to the doctor of her choice and such doctors could support her claim for compensation. The only effect of the rule is that if no permission is obtained, the insurer is not obligated to pay the medical expenses incurred. Garland v. Anaconda Co. (1978), _____ Mont. _____, _____ P.2d _____, 35 St.Rep. _____ (No. 14132, 7/3/78). While not factually applicable to the circumstances of this case, we stated that the administrative rule could not be used to defeat the general purpose of the Workmen's Compensation Act. The same is true of the case at hand. Where an insurer refuses to recognize the compensability of a claim there is no duty on the claimant to obtain permission of the insurer to change doctors. In denying a claim an insurer is taking a chance that later it may be proven to be compensable. If so, the insurer, in denying liability for medical bills, cannot hide behind the regulation as a sanctuary against the payment of medical bills incurred by a claimant.

In this case the Workers' Compensation Court ordered payment of the medical bills and we see no evidence to justify overturning that order, in whole or in part. The only evidence elicited on cross-examination of claimant was that the original doctor claimant had seen, did not refer her to the remaining doctors. Even if that were so, we cannot conclude under the

-13-

facts of this case that claimant had no right, under pain of losing medical benefits, to seek out the medical treatment she felt necessary to get to the source of her problem. Accordingly, the Court was correct in ordering Liberty Mutual to pay all the bills submitted by claimant.

Finally, Liberty Mutual complains that the Workers' Compensation Court was wrong in assessing a statutory 10 percent penalty against them for unreasonably delying or refusing to pay compensation. Section 92-849, R.C.M. 1947. An analysis of the facts leads us to conclude that reasonable men would conclude that Liberty Mutual has been anything but reasonable.

For the past three years Liberty Mutual has not only denied the compensability of the claim but refused to pay the weekly compensation and medical benefits after it had been ordered to do so. It refused even though it did not have a stay order delying payment until final resolution of this matter. Assuming moreover, a legitimate dispute as to the amount of weekly compensation, Liberty Mutual knew claimant would at least be entitled to the minimum compensation compelled by statute. And there were certain medical bills even Liberty Mutual recognized as being related to the injury, but still the bills remain unpaid. Clearly the assessment of the statutory 10 percent penalty was called for in this case.

The decision of the Workers' Compensation Court is affirmed except as to the modifications noted herein. This case is remanded to the Workers' Compensation Court for further proceedings consistent with this opinion and for such further proceedings as are required to bring this case to a final resolution.

-14-

_____
                    Justice

We Concur:

_____
          Chief Justice

_____
              Justice

-15-

Mr. Justice John Conway Harrison Dissenting:

I respectfully dissent.

I do not find claimant, Betty Hutchison, carried the burden of proof with respect to the job-related character of her injury. She could not relate the injury to any particular time of day nor to any specific task she performed on that day. None of her co-workers was aware that she had injured her back while working. In addition, claimant told her foreman she had injured her back changing a flat tire. The majority states: "This testimony does not establish that claimant was not injured in the manner in which she testified." (Emphasis added.) But it is not necessary for an employer to prove that an employee was not injured--that would place an unreasonable burden on the employer. One claiming to have been injured on the job has the burden of proving such an injury. Vetsch v. Helena Transfer & Storage Co. (1969), 154 Mont. 106, 460 P.2d 757.

The majority does not properly assess the significance of section 92-418(1), R.C.M. 1947 (Supp. 1977). According to the statute, an injury must be:

> "(1) a tangible happening of a traumatic nature from an unexpected cause, or unusual strain, resulting in either external or internal physical harm, and such physical condition as a result therefrom * * *."
> (Emphasis added.)

Claimant, in the instant case, has failed to show a "tangible happening" which meets the requirements of this Court's test stated in Hurlbut v. Vollstedt Kerr Co. (1975), 167 Mont. 303, 306-07, 538 P.2d 344:

> "* * * there are two elements in the statute which must be met (1) there must be a tangible happening of a traumatic nature, and (2) this must be shown to be the cause of physical harm."

Apart from the question of whether this was a compensable injury, I think the majority also erred in allowing payment of all the medical bills claimant submitted. By claimant's own admission, certain bills were included which had no connection with the alleged injury. When asked about her listing three gynecologists with her other treating physicians, claimant admitted:

"Q. The doctors did not see you for your back, did they? A. No."

Furthermore, she submitted bills from at least ten different doctors. Yet, there is no allegation that claimant's original treating physician did not properly treat her. There is no evidence of any emergency necessitating claimant's going to another doctor. While I admit there are often circumstances apart from those mentioned which might require treatment by another physician, I would impose a rule of reasonableness in seeking a variety of medical opinions.

For these reasons I would reverse the decision of the Workers' Compensation Court as to liability; or in the alternative, I would reverse the court's decision regarding allowable medical expenses and remand for further consideration in line with this opinion.

_____
Justice