No. 85-72

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

JAMES HOWARD DENEND,

        Claimant and Respondent,

    -vs-

BRADFORD ROOFING AND INSULATION,
        Employer,

    and

GLACIER GENERAL ASSURANCE COMPANY,

        Defendant and Appellant.

_____

APPEAL FROM:  The Workers' Compensation Court, The Honorable
            Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Garlington, Lohn & Robinson; Bradley Luck, Missoula,
        Montana

    For Respondent:

        Ken H. Grenfell, Missoula, Montana

_____

Submitted on Briefs:  Aug. 29, 1985

Decided:  December 5, 1985

Filed:  DEC - 5 1985

_____

                      Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Bradford Roofing and Insulation (Bradford), the employer, and Glacier General Assurance Company, the defendant, appeal the Workers' Compensation Court's award of temporary total disability benefits to James Denend (claimant). The issue is whether substantial evidence supports the lower court's ruling that claimant's benefits should be based on a forty hour work week. We affirm.

In September 1983, Tony Ludwig, a Bradford foreman, contacted the State Job Service office in Missoula, Montana, seeking to hire workers. Ludwig testified that he told the Job Service that the job would be part-time seasonal work. Regarding the work hours an applicant could expect, he stated that they work when the work was available. He stated that he did not tell the Job Service that the job would be forty hours a week. The Job Service filled out a job order relative to Bradford's request for workers. The job order was introduced into evidence and states that the job would entail forty hours a week and would last two to three months.

Ludwig testified that his usual hours of work per week in the roofing business would be less than forty hours and would fluctuate significantly depending on the weather, scheduling, supplies and other variables. Ludwig hired claimant to work for Bradford on a large roofing project in Missoula. Ludwig stated that he told claimant that claimant would work when work was available and that he did not tell claimant that claimant would work forty hours a week. On cross examination, Ludwig admitted that a normal work week would be Monday through Friday, 7:45 a.m. to 4:30 p.m., with a half hour lunch break.

Dane Bradford, the superintendent and vice-president of Bradford Roofing and Insulation, testified by deposition. He testified that the company's employees normally work less than forty hours a week. He stated that temporary employees such as claimant, work, and are told that they will work, only on an "as needed" basis. He stated that there were no representations made to temporary employees that they would work forty hours a week. Dane Bradford further stated that claimant could not expect to work forty hours a week consistently. On cross-examination however, he agreed that if the weather were good and everything was going smoothly on a big project, the workers would work from 8:00 a.m. to 4:30 p.m. and would work forty hours a week.

Claimant testified that on his first day of work he found out that he would have to join a union and that he would work forty hours a week until the job was completed. He repeatedly stated that his understanding was that he would generally work forty hours each week. Claimant joined a union as required by his new job. The union was a party to a collective bargaining agreement with a number of roofing contractors, one of which was Bradford. This agreement defines a regular work day as eight hours and a regular week as five consecutive days.

Claimant described his employment as full-time. He began work on a Thursday and worked thirteen hours total that day and the next. The next week, his first full week of work, claimant worked thirty-eight hours. He worked forty hours his second full week, thirty-two hours the next week, and twenty-eight and one half hours the following week. He testified that the week he worked twenty-eight and one half hours the weather was bad, with rain, mist and clouds.

3

Claimant stated that, because of the weather, Bradford packed up some of its equipment and moved it to Billings. He did not work at all for Bradford for the next four weeks, although he was at all times ready, willing and able to do so. Then, in mid-November 1983, claimant worked for Bradford twenty-three hours in one week and twenty-eight and one half hours the following week. After that, he worked only a few hours a week, if at all, doing odd jobs for Bradford for the next two months. In January 1984, claimant was injured while working for Bradford. Bradford and its insurer do not now dispute that the injury is compensable and that claimant is entitled to Workers' Compensation benefits.

Following claimant's injury, Sandy Diehm, Bradford's office manager, prepared the Employer's First Report on the injury. She routinely prepared these reports for Bradford. The report on claimant's injury states that claimant is a full-time employee, weather permitting. The report also states that, weather permitting, claimant worked eight hours a day and forty days a week. Diehm apparently meant to state in the report that claimant worked forty hours per week. She testified by way of deposition that claimant was a full-time employee.

The Workers' Compensation Court found that claimant was hired by Bradford on a full-time basis and that claimant's usual hours of employment were forty hours a week. The court based its award of temporary total disability benefits upon a forty hour work week. Bradford and its insurer appeal.

Appellants argue that claimant's temporary total disability benefits should be based on a work week (the base work week) of well below forty hours a week. Appellants argue that the base work week should be computed by averaging

4

the hours per week that claimant worked for Bradford. The result is a base work week of 11.7 hours per week. Appellants charge that the lower court's finding of a base work week of forty hours is completely erroneous.

The standard of review is clear.

> "Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that Court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision."

Byrd v. Ramsey Engineering (Mont. 1985), 701 P.2d 1385, 1386, 42 St.Rep. 991, 992; quoting Steffes v. 93 Leasing Company (1978), 177 Mont. 83, 86, 580 P.2d 450, 452; citing Bond v. St. Regis Paper Co. (1977), 174 Mont. 417, 571 P.2d 372.

In the instant case, there was evidence that claimant's usual hours of employment for Bradford were forty hours a week. This evidence consists of claimant's testimony, the Job Service job order, the Employer's First Report of injury, the collective bargaining agreement definitions of regular work day and regular week, and the admissions of Tony Ludwig and Dane Bradford. There was conflicting evidence tending to establish that an employee such as claimant would generally average less than forty fours a week. However, it is the province of the lower court to weigh and balance the evidence. Here, there is substantial evidence to support the lower court's finding of a base work week of forty hours. Therefore, we affirm that decision.

Appellants argue not only that we should use an averaging formula to establish claimant's base work week, but

5

that we are required to do so under § 39-71-701 and § 39-71-116(20), MCA.

Under § 39-71-701, MCA, a temporarily totally disabled employee receives Workers' Compensation benefits which are ". . . 66 2/3% of the wages received at the time of the injury." Section 39-71-116(20), MCA, defines wages as "the average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week . . . " From this definition of wages, appellants cite and emphasize the words "average gross earnings received." These words, appellants argue, require that a court average the hours an employee has worked. We find that appellants' emphasis is misplaced. The phrase appellants emphasize is modified by the words "usual hours of employment in a week." The lower court here found that claimant's usual hours of employment were forty hours a week. This finding was based on substantial evidence.

Finally, we decline appellants' invitation to overturn this Court's ruling in Hutchison v. General Host Corporation (1978), 178 Mont. 81, 582 P.2d 1203. The Hutchison Court declined to use either of two averaging formulas to fix the employee's base work week. One formula advanced in Hutchison is similar to the formula advanced in the instant case. What this Court stated in Hutchison bears repeating.

> . . . neither of the averaging methods offered by Liberty Mutual is required for determining the weekly compensation. Section 92-701 [the predecessor to the present § 39-71-701, MCA] is not a wage loss statute; rather it is designed to provide a form of insurance to a person who is on temporary total disability.

Hutchison, 178 Mont. at 87, 582 P.2d at 1207. That proposition is still accurate as applied to our present statute, § 39-71-701, MCA.

Appellants, in their reply brief on appeal, advanced a constitutional argument which had not been mentioned in either appellants' opening brief or in respondent's brief.

Respondent/claimant made a motion to this Court to strike appellants' reply brief, in its entirety, as not complying with Rule 23(5)(c) of the Montana Rules of Appellate Civil Procedure. That rule states:

> Reply brief. The appellant may file a brief in reply to the brief of the respondent. The reply brief must be confined to new matter raised in the brief of the respondent. No further briefs may be filed except with leave of court.

Rule 23(5)(c), M.R.App.Civ.P. On September 12, 1985, this Court filed an order denying respondent's motion to strike stating that this Court would not consider any portion of the reply brief which is not in conformance with Rule 23(5)(c), M.R.App.Civ.P.

Therefore, this opinion does not consider the constitutional argument appellants first advanced in their reply brief.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

7