No. 90-426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

     Plaintiff and Respondent,

v.

EMIL LONGNECK,

     Defendant and Appellant.

FILED
JAN 29 1991
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Allen Beck, Esq., Billings, Montana

     For Respondent:

     Hon. Marc Racicot, Attorney General; James
Yellowtail, Assistant Attorney General; Helena,
Montana

     Harold Hanser, County Attorney; Charles A.
Bradley, Deputy County Attorney, Billings,
Montana

Submitted on Briefs:  January 3, 1991

Decided:  January 29, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Emil Longneck was convicted of negligent homicide after a jury trial in the District Court of the Thirteenth Judicial District, Yellowstone County. He appeals. We affirm.

The issue is whether the District Court properly enhanced Longneck's sentence under § 46-18-221, MCA, for the use of a gun.

On November 6, 1989, the body of Winchell Birdtail was found lying in an alley on the south side of Billings, Montana. He had been shot once in the head. His body had apparently been dragged from a motor vehicle and placed in the alley. An autopsy revealed that he had died in the late evening hours of November 5 or early in the morning of November 6, 1989.

Witnesses at trial testified that Birdtail and the defendant left the Arcade Bar in Billings at about 8:00 p.m., November 5, in defendant's car. One witness testified that several days earlier, defendant had stated that he was trying to obtain a gun. Another testified that defendant told her he had a gun. After leaving the Arcade Bar, defendant and Birdtail visited the homes of several acquaintances, trying to borrow money to continue drinking. They were both described as intoxicated at that time.

An acquaintance in whose basement defendant had been staying testified that the defendant returned to his home alone about 10:00 or 10:30 p.m. The witness observed defendant wetting a rag on an outdoor faucet and then "mess[ing] around" in the front seat of defendant's car. During the police investigation, rags and pieces

2

of clothing stained with blood consistent with Birdtail's were found in the yard and basement of that house. The front passenger side of defendant's car was heavily bloodstained.

The defendant testified in his own behalf. He stated that he and Birdtail were sitting in the car after their last attempt to borrow money failed, and Birdtail indicated that he wanted to commit a robbery to get money. He testified that when he refused to go along with this, Birdtail produced a gun, they struggled over the gun, and Birdtail was shot when it went off. Defendant testified that, "scared," he had put Birdtail's body in an alley. He testified that he did not know what had happened to the gun because he had blacked out after the shooting.

Defendant was charged with deliberate homicide. The jury found him guilty of the lesser included offense of negligent homicide. He was sentenced to ten years in prison plus an additional ten years, to run consecutively, for the use of a deadly weapon in the commission of the offense, under § 46-18-221, MCA.

Montana's weapon enhancement statute, § 46-18-221, MCA, provides that

> [a] person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45-8-332(1), or other dangerous weapon shall, in addition to the punishment provided for the commission of such offense be sentenced to a term of imprisonment in the state prison of not less

3

than 2 years or more than 10 years, except as provided in 46-18-222.

Defendant argues that the "knowingly" state of mind required under § 46-18-221, MCA, has not been established and that application of the weapon enhancement statute is therefore improper.

The weapon enhancement statute may be applied in a negligent homicide. State v. Redfern (1987), 228 Mont. 311, 741 P.2d 1339; State v. Stroud (1984), 210 Mont. 58, 683 P.2d 459; State v. Hubbard (1982), 200 Mont. 106, 649 P.2d 1331. By its own terms, the enhancement statute applies to "any offense."

The defendant's testimony concerning the events surrounding the shooting was that

I started back towards my door, and he told me to wait. And he turned around and looked back towards the back, and that's when I grabbed for the gun.

Q. Okay. This was while you were parked someplace on the south side?

A. Yes.

Q. All right. When you grabbed for the gun, will you tell the jury what happened?

A. We struggled over it.

Q. Please continue.

A. And it went off, and he flew back - - or I thought he jumped back at first, but I guess he flew back from the bullet wound. The bullet hit him.

The defendant's assertion that the shooting of Birdtail was accidental does not negate his admission that he voluntarily

4

grabbed for the gun being held by Birdtail. We hold that, under the facts of this case, defendant's voluntary act of grabbing for the gun is sufficient to meet the "knowingly" requirement of the enhancement statute.

Defendant's counsel states in his reply brief that he has been instructed to bring to this Court's attention defendant's argument that the evidence is insufficient to support his conviction. Attached to the reply brief is a typewritten sheet containing defendant's argument on that issue. Issues first raised in a reply brief are not properly before this Court and will not be considered on appeal. Rule 23(c), M.R.App.P.; Downs v. Smyk (1982), 200 Mont. 334, 336-37, 651 P.2d 1238, 1239, aff'd. after remand, 211 Mont. 374, 685 P.2d 347; Denend v. Bradford Roofing & Insulation (1985), 218 Mont. 505, 509, 710 P.2d 61, 63-64.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices

5