No. 94-505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FILED

AUG 2 4 1995

~~Ed~~ *Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

ANA MARIA TORRES,

    Plaintiff and Appellant,

  v.

STATE OF MONTANA,

    Defendant and Respondent.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael D. Cok, Cok, Wheat &Brown, Bozeman, Montana

        Stephen C. Pohl, Attorney at Law, Bozeman, Montana

    For Respondent:

        Steven J. Harman and Michael P. Heringer,
Brown, Gerbase, Cebull, Fulton, Harman &Ross, P.C.,
Billings, Montana

---

Heard:  June 1, 1995
Submitted:  July 6, 1995
Decided:  August 24, 1995

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Ana Maria Torres appeals an order of the District Court for the Eighteenth Judicial District, Gallatin County, dismissing her negligence complaint against the State of Montana. The court granted summary judgment in favor of the State, ruling that the exclusive remedy provision of the Occupational Disease Act barred Torres from bringing suit against the State after she had successfully pursued an occupational injury claim against it. We affirm.

The issue is whether the court erred in entering summary judgment.

Torres was admitted to Montana State University (MSU) in 1985 to pursue her doctorate of philosophy in chemistry. She continued her studies until February of 1988, when she withdrew because of failing health.

While Torres pursued her doctorate degree, she was also employed by MSU as a teaching and research assistant. She was paid $6,500 per year and received $360 per quarter in out-of-state fee waivers. She was provided with workers' compensation coverage.

Torres claims that beginning in the winter quarter of 1988, she began to suffer medical problems as a result of exposure to toxic substances. All of her claimed exposure to toxic substances occurred while she was in Gaines Hall on the MSU campus as either a student or an employee.

In February 1992, Torres filed a claim for workers' compensation benefits, asserting that her medical problems were caused by her work-related activities for MSU. In her claim, Torres stated

she suffered organic brain damage while working as a teaching and research assistant at Gaines Hall during the period of September 1985 to February 1988. She indicated that she worked five days per week, eight hours per day. She claimed she was injured over time and therefore suffered an occupational disease as a result of working at MSU.

The State initially denied Torres's claim for compensation. However, on July 2, 1993, the State and Torres entered a $47,500 disputed liability settlement under the Occupational Disease Act. The settlement was approved by order of the Employment Relations Division of the Department of Labor & Industry.

Torres filed this suit on August 30, 1993. In her complaint, she alleged that she sustained injuries as a result of her exposure to toxic substances while attending the MSU College of Graduate Studies as a student between 1985 and 1988.

The State moved for summary judgment in May 1994. After briefing and a hearing, the court issued its order and memorandum granting the motion. The court reasoned:

> [Torres] now claims that the toxic exposure occurred primarily as a student. The percentages of exposure however are not important. The act does not speak to the applicability of the exclusive remedy where the injury claim arose from both work and non-work related activities. The fact remains that [Torres], by her own representations before the Workers' Compensation Division and in her present affidavit, claimed that she was injured in the course and scope of her employment when she applied for workers' compensation or occupational disease benefits. She negotiated and was paid consideration based upon this claim. As a result, the exclusive remedy provision bars her from suing the State of Montana at this time.

From this determination, Torres appeals.

Did the court err in entering summary judgment?

This Court's standard of review of a summary judgment is the same as that initially used by the district court and as set forth at Rule 56(c), M.R.Civ.P. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. This Court must determine whether there is a genuine issue of material fact and whether the State is entitled to judgment as a matter of law, based upon the facts set forth in the pleadings and in the depositions, answers to interrogatories and requests for admissions, and affidavits in the record.

When a worker is injured on the job, his or her rights are governed by the statutory scheme of the Workers' Compensation Act or the Occupational Disease Act. Both acts provide that the remedies thereunder are exclusive. The exclusivity provision of the Workers' Compensation Act is codified at § 39-71-411, MCA. The only exception to the exclusive remedy provision of the Workers' Compensation Act is set forth at § 39-71-413, MCA. That exception relates to intentional or malicious acts or omissions by the employer or a co-employee.

Because Torres settled her claim for benefits under the Occupational Disease Act, the exclusivity provision of that Act applies here and was relied upon by the District Court. It states:

> The right to recover compensation pursuant to the provisions of this chapter for occupational diseases sustained by an employee and arising out of and in the course of employment, whether resulting in death or not, is the exclusive remedy therefor against an employer who is properly insured under the Workers' Compensation Act and the Occupational Disease Act of Montana.

4

Section 39-72-305(1), MCA.

In his well-known treatise, Professor Larson discusses the policy reasons behind the exclusive remedy provision in workers' compensation law:

> Once a workmen's compensation act has become applicable either through compulsion or election, it affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier. This is part of the quid pro quo in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.

2A Larson's Workmen's Compensation Law, § 65.11 (1995). This Court has made a similar policy explanation:

> The purpose of the Workers' Compensation Act is to protect both the employer and the employee by incorporating a quid pro quo for negligent acts by the employer. The employer is given immunity from suit by an employee who is injured on the job in return for relinquishing his common law defenses. The employee is assured of compensation for his injuries, but foregoes legal recourse against his employer.

Sitzman v. Schumaker (1986), 221 Mont. 304, 307-08, 718 P.2d 657, 659.

Torres's position in this action is that she became ill because of her exposure to chemicals during the fifty to sixty hours she spent each week in the chemistry laboratory as a student in pursuit of her degree. She contends that the exclusive remedy provisions do not apply in this case because she was not injured in the course and scope of her employment. She uses this argument to distinguish this case from cases concerning the dual capacity doctrine, which both parties describe as universally disfavored. Torres admits that the dual capacity doctrine was rejected by this

5

Court in Herron v. Pack and Co. (1985), 217 Mont. 429, 705 P.2d 587.

Torres maintains that the District Court's order expands the exclusive remedy doctrine so that an injured person could be prevented from recovering damages under both workers' compensation and in an action for negligence. She sets forth, as an example, a hypothetical of a convenience store employee who, on his day off, slips and falls while shopping at the convenience store.

Torres's hypothetical is not on point. Unlike the worker in her hypothetical, Torres concedes that her injuries may have been sustained at least in part within the scope and course of her employment. Moreover, the hypothetical leaves out the critical factor of a previous settlement between the parties, under workers' compensation law, for the injury at issue.

The injuries which Torres now claims resulted in large part from toxic exposure while she was a student at Gaines Hall are the very same injuries for which she filed and settled her claim for workers' compensation. For purposes of this action, Torres states that her disease arose from a hazard to which she was exposed outside of employment. However, when she filed her claim for workers' compensation benefits, she did not allege that any portion of her disease was caused by exposure other than through her employment. Instead, she claimed that her disease arose out of and in the course of her employment.

If Torres had, at the time she filed her claim for workers' compensation, revealed what she is contending now--i.e., that her

exposure to the chemicals occurred primarily outside the employment relationship--then it appears she would not have been entitled to any benefits under the Occupational Disease Act. See § 39-72-408(4), MCA. She could then have pursued a negligence cause of action for her injuries.

Torres chose to pursue a remedy under the Occupational Disease Act and to enter a settlement under that Act. She has obtained a remedy for her injury--the $47,500 settlement under the Occupational Disease Act.

At oral argument, Torres took the position that a jury ought to be allowed to apportion the causation of her injuries between that which occurred in the course and scope of her employment and that which occurred outside of her employment. However, she chose not to argue dual causation in her claim for workers' compensation, and she did not raise the issue of apportionment in negotiating her workers' compensation settlement.

Torres further claims that the State failed to introduce any evidence to disprove her assertions of fact as to the cause of her injury and therefore failed to meet its burden of proof for summary judgment. She denies the District Court's conclusion that she has conceded that her injuries resulted, at least in part, from her employment at MSU. She argues that no factual determination has been made on that issue, and that it is a material issue of fact.

There is no issue of material fact. Torres concedes that she has accepted a settlement under the Occupational Disease Act from the State for the injury of which she here complains.

7

> There **are several exceptions to** the **necessity** for affirmative proof of the defense [that the plaintiff was an employee entitled only to workers' compensation]. One occurs when the employer-employee relation is shown in plaintiff's complaint. Another occurs when plaintiff admits that his injuries arose out of his employment with the defendant. <u>And, of course, the most reliable exception of all is the actual acceptance of compensation benefits. Note that the plaintiff cannot escape the consequences of this action by declaring that he was accepting the benefits "without prejudice" to his negligence claim.</u>

2A Larson's Workmen's Compensation Law, § 65.12 (1995) (emphasis added). "[B]y accepting the benefits of the workmen's compensation law [the employee] is foreclosed from now asserting that his injuries did not arise in the course of his employment." Hensley v. United States (D.Mont. 1968), 279 F.Supp. 548, 551.

> The operative fact in establishing exclusiveness is that of actual coverage. .
>
> . . . [A] valid and unappealed award for compensation . . . is res judicata on the issue of coverage, and is binding on the court in which the employee attempts to bring his common-law suit.

2A Larson's Workmen's Compensation Law, § 65.14 (1995).

It is not necessary, as Torres contends, to rely upon a theory of estoppel to reach our conclusion. The controlling legal theory in this case is the exclusive remedy provision of the law of workers' compensation.

In her reply brief, Torres voices a new argument, that the State's interpretation of the exclusive remedy provision violates her right to equal protection by classifying victims of negligence according to whether the negligent tortfeasor is the victim's employer. Because she did not raise this argument before the District Court or in her initial brief on appeal, we do not

8

consider it.  See Rule 23(c), M.R.App.P.; Denend v. Bradford Roofing & Insulation (1985), 218 Mont. 505, 509, 710 P.2d 61, 63-64.

We hold that, as a matter of law, Torres is not entitled to bring this action because she has already been accorded a remedy for her injury under the Occupational Disease Act.  We therefore affirm the decision of the District Court granting summary judgment to the State of Montana.


_____
                Chief Justice

We concur:

_____


_____


_____


_____
        Justices

9

Justice W. William Leaphart, dissenting.

I respectfully dissent. The Court has concluded that, since Torres filed and settled a claim under the Occupational Disease Act, any further tort claim is precluded by the exclusivity provisions of Section 39-72-305(1), MCA. Section 39-72-305(1), MCA, provides as follows:

> The right to recover compensation pursuant to the provisions of this chapter for occupational diseases sustained by an employee and arising out of and in the course of employment, whether resulting in death or not, is the exclusive remedy therefor against the employer who is properly insured under the Workers' Compensation Act and the Occupational Disease Act of Montana. [Emphasis added.1

In my view, the Court has ignored the fact that both Torres and the University wear more than one hat. In the context of her occupational disease claim, Torres was wearing the hat of an employee asserting a claim against her employer, Montana State University (MSU). In the context of her present tort claim, she wears the hat of a student asserting a claim against her educational institution. Section 39-72-305(1), MCA, by its own terms, provides an *employee* with an "exclusive remedy therefor against the *employer.*" As we acknowledged in Ridenour v. Equity Supply Co. (1983), 204 Mont. 473, 478, 665 P.2d 783, 786, "[t]he legislature only intended that an employee not have a common law action against his employer." Having settled her occupational disease claim, Torres, as employee, is clearly precluded from asserting any further claims against MSU in its capacity as her employer. The statute does not, however, preclude Torres, in her

10

role as student, from asserting a claim against MSU as her educational institution.

Torres should be given the opportunity, difficult as it may be, to present whatever evidence she can marshall to prove that she was exposed to toxic chemicals while acting as a student as opposed to her exposure during the course of her employment. She would also have the task of apportioning the damages resulting from these two distinct chemical exposures. As daunting as this burden may be, it is a matter of proof which should not be foreclosed by summary judgment.

The fact that Torres previously claimed she was exposed to chemicals during the course of her employment is not inconsistent with her present contention that she was <u>also</u> exposed while a student, outside the scope of her employment. The fact that the law provides that her occupational disease remedy is exclusive as against her employer does not foreclose a claim against non-employers, such as her educational institution.

I would reverse the entry of summary judgment and allow Torres to proceed to trial.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent of Justice Leaphart.

_____
Justice

11

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

With no evidence from which the cause of Ana Torres' disease can be apportioned between the time she spent at work and the time she spent in the chemistry lab as a student, the majority simply concludes that because she made a prior claim for occupational disease benefits, she is barred from now claiming that there was another equally significant or greater cause for her condition. Without so stating, the majority opinion bars Torres' claim based on a theory of estoppel. However, estoppel has never been asserted as a defense in this case, and therefore, is not applicable. Furthermore, even if it had been pled, there is no evidence in the current state of the record which would support the elements of any form of estoppel.

The majority opinion is devoid of any recognition that there may be concurrent causes for the same injury and avoids any analysis of the Occupational Disease Act's exclusivity provision, as applied to the facts in this case.

Distilled to its essence, the majority's conclusion is simply that, "you were paid some money before. We're not going to let you have any more." This may satisfy the majority's need to punish Torres for what it construes as inconsistent positions. However, in terms of legal analysis of the issues presented to this court, the majority opinion leaves a lot to be desired.

The issue in this case is whether Torres' claim is barred by the exclusivity provision of Montana's Occupational Disease Act.

12

It is important to keep in mind that what she may have believed or said on some other occasion is a different issue and is not determinative of the first issue. However, because of the majority's preoccupation with what it concludes was Torres' inconsistent representation on an earlier occasion, it is necessary to analyze this case on two levels.

1. Is Torres' claim barred by the exclusivity provision of the Occupational Disease Act?

2. What is the effect of Torres' prior claim that her disability was caused or contributed to by the conditions of her employment?

<u>ISSUE 1</u>

Montana's Occupational Disease Act is found at §§ 39-72-101 to -714, MCA. The exclusive remedy provision in the Occupational Disease Act is found at § 39-72-305(1), MCA, and provides:

> The right to recover compensation pursuant to the provisions of this chapter for occupational diseases sustained by an employee <u>and arising out of and in the course of employment</u>, whether resulting in death or not, is the exclusive remedy therefor against an employer who is properly insured under the Workers' Compensation Act and the Occupational Disease Act of Montana.

(Emphasis added.)

Therefore, by the plain language of the Occupational Disease Act, the exclusive remedy provision only pertains to those diseases which "arise out of" a person's employment. Section 39-72-408, MCA, specifically states that certain diseases do not "arise out of" employment. It states that:

13

> Occupational diseases shall be deemed to arise out of the employment only if:
>
> . .
>
> (4) the disease does not come from a hazard to which workmen would have been equally exposed outside of the employment . .

In this case, there is very little evidence. There is the affidavit of the plaintiff and an affidavit from a college administrator. However, plaintiff's affidavit is uncontroverted to the effect that she spent at least three times as much time in Gaines Hall as a student ("outside of her employment") as she did as a teaching assistant.

If Torres is able to prove what she alleges, and if some causal connection between chemicals and the atmosphere of Gaines Hall and her present disability can be established, then she has proven that her disease was caused by a hazard "outside of the employment," and therefore, that it did not "arise out of" her employment, and therefore, her claim is not barred by the exclusive remedy provision found at § 39-72-305, MCA.

The majority is very much concerned that plaintiff has previously received a portion of the disability benefits to which she would have been entitled had her disease been caused during her employment. However, an occupational disease, by definition, occurs over a prolonged period of time, and unlike an industrial injury, may be caused from conditions that existed not only in the workplace, but elsewhere. That is why the Occupational Disease Act, unlike the Workers' Compensation Act, specifically provides for apportionment of disability benefits based on the percent of a

14

given disease or disability that is attributable to exposure that occurs during the course of employment. Section 39-72-706(1), MCA, specifically provides in relevant part that:

[I]f disability . . . from any other cause not itself compensable is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease, the compensation payable under this chapter must be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability . . . as such occupational disease as a causative factor bears to all the causes of such disability . . .

In other words, under the Occupational Disease Act, a claimant is entitled to recover only that portion of his or her disability benefits which represents the portion of his or her disability that arose out of employment. The Act specifically allows for an employer to disclaim liability for any portion of a person's disability which is unrelated to employment. Therefore, based upon the previously mentioned statutes, that portion of disability would not be covered by the exclusive remedy provision found at § 39-72-305, MCA.

There are many issues to be resolved in this case. First, the fact finder needs to decide whether the plaintiff was injured by chemical exposure at Gaines Hall. If so, the fact finder needs to decide what portion of exposure occurred during the course of her employment, as opposed to the **time** during which she was a student, and whether, based on that determination, her claim is barred by the exclusive remedy provision. However, none of these issues can be resolved consistent with the statutory framework of the

15

Occupational Disease Act based on the uncontroverted affidavit of the plaintiff.

The statutory framework within which to decide whether the exclusive remedy provision applies is not discussed in the majority opinion. Its discussion is limited to the fact that on a previous occasion the plaintiff made a claim for occupational disease benefits based on her contention that her disability was caused or contributed to by chemical exposure during the course of her employment. The second question, then, is what is the effect of her prior claim. That issue involves two sub-questions.

First, was her prior claim inconsistent with her current claim. I agree with Justice Leaphart that it was not. Because of the nature of an occupational disease, as opposed to an industrial injury, an occupational disease can, as the Occupational Disease Act recognizes, occur over time and at more than one location. Therefore, it is not at all inconsistent with Torres' current claim that her disease may have been contributed to during the course of her employment. Neither is it unreasonable at the outset of litigation before facts are fully developed to allege that a condition is attributable to more than one cause, and then let causation be more clearly established as a result of discovery and preparation. Ideally, the plaintiff should have been able to plead alternate claims in the same suit. However, that was not possible because of the exclusive jurisdiction of the Workers' Compensation

16

Court for occupational disease claims, and the fact that third-party claims have to be brought in the district court.

Furthermore, it must be kept in mind that had the State agreed that plaintiff's occupational disease arose out of and was related to her employment, she was entitled to several times the amount of benefits she actually received. Following the logic of the majority opinion, why is the State not barred from defending this claim on the basis of her previous claim when it saved more than she received in the previous claim by denying that her disease was work related?

The second sub-question is, if Torres' prior claim is deemed inconsistent with her current claim, then what is the effect of her prior claim?

Judicial estoppel and statutory estoppel do not apply because her prior claim was not made as part of any judicial proceeding.

Equitable estoppel does not apply because it has not been pled, it has not been argued on appeal, and even if it had been pled and argued on appeal, there is a total absence of proof of its several elements. Furthermore, there is a substantial question about whether the State of Montana has standing to raise the defense of equitable estoppel.

At most, plaintiff's prior claim that her disability was caused during the course of her employment is an arguably inconsistent statement which can be presented to the fact finder for consideration in combination with her current contention that the majority of her exposure occurred outside the course of her

17

employment. Her prior claim can be used to prove the truth of what was said on the prior occasion, or may be offered for impeachment. However, it does not establish as a matter of law that what she claims at this time, even if inconsistent, is untrue. Likewise, the State Fund's prior position that her disability was not caused by her employment is arguably inconsistent with its current position that her claim is barred by the exclusive remedy provision of the Occupational Disease Act. Both of these prior positions are simply evidence to submit to the fact finder for consideration when it resolves the issues of whether plaintiff's disease was caused by chemicals to which she was exposed at Gaines Hall; and if so, whether her greater exposure occurred as an employee or as a student.

The majority is too preoccupied by the fact that Torres received some benefit from her settlement with the State Fund based on her contention that her disability was caused during the course of her employment. The majority, on the other hand, has no problem with the fact that the State Fund probably saved more than it paid Torres by denying that her condition was caused during the course of her employment. The majority's concern is unjustified. Even if Torres succeeds in this claim, she would receive no double recovery. The State is entitled to an offset from any recovery received in this case for the amount paid by the State Fund pursuant to Torres' previous claim.

For these reasons, I dissent from the majority opinion. I would reverse the summary judgment of the District Court and remand

18

this case to the District Court for resolution of the factual issues raised by Torres' complaint.

_____
Justice

August 24, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael D. Cok,
COK, WHEAT & BROWN
Box 1105
Bozeman MT 59771-1106

Stephen C. Pohl
Attorney At Law
1700 West Koch Street, Suite 5
Bozeman MT 59715

Steven J. Harmen
Brown, Gerbase, Cebull, Fulton,
Harman & Ross, P.C.
Box 849
Billings MT 59103-0849

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy